274 F.Supp. 364 (1967)
UNITED STATES of America ex rel. Henry L. ANDERSON
v.
Alfred T. RUNDLE, Supt.
Misc. No. 3556.
United States District Court E. D. Pennsylvania.
September 29, 1967.
*365 Lenard H. Sigal, Philadelphia, Pa., for relator.
Charles A. Haddad, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

OPINION AND ORDER
BODY, District Judge.
After waiving his right to jury trial, relator Anderson was tried in the Court of Quarter Sessions of Philadelphia County and convicted of the felonious possession of narcotic drugs. He was sentenced to serve not less than two and one-half years nor more than ten years. The conviction was affirmed on appeal,[1] and Anderson was confined in the State Correctional Institution at Graterford to commence service of his sentence. Pursuant to an order entered by this Court on July 13, 1967, he was granted a federal habeas corpus hearing.
The issues now before this Court have been fully raised and decided adversely to the relator by the state courts on the trial and appellate levels. State remedies have thus been effectively exhausted. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).
Relator's petition is founded on two contentions: (1) that Anderson was illegally arrested without probable cause at some point in time before the search of his automobile, and that the evidence produced by the subsequent search was thus the "fruit of the poisonous tree" and should have been excluded at trial under the rule of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); (2) that Anderson's alleged consent to the search of his automobile did not constitute a knowing, competent, and voluntary waiver of his right to be free from a search and seizure violative of the Fourth Amendment. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
At the relator's hearing before this Court, the evidence presented consisted solely of the record of all the state proceedings related to his conviction. From that record the following facts appear:
At 2:05 A.M. on November 16, 1964, two police officers observed a driver *366 momentarily appear to lose control of his automobile as he turned a corner. Suspecting the driver to be intoxicated, the officers signalled him to stop. The driver, relator Anderson, pulled his car over to the side of the road.
Upon request, Anderson gave the officers his driver's license and operator's card. Anderson's passenger had no identification, but alleged he was a garage attendant and intended to return the car to the garage after leaving Anderson at home. While one officer was examining Anderson's cards, the other officer shone his flashlight into the car. He then recognized Anderson as a "known narcotics man" from a photograph of the relator on the police bulletin board. The officer shone his light on the floor of the car to see if Anderson had a bottle of alcohol "or anything else" hidden there. The flashlight beam revealed a cylindrical package wrapped in brown paper partially protruding from beneath the front seat. Having recognized Anderson as a "narcotics man", the officer suspected that the package contained narcotics paraphernalia.
Neither Anderson nor his passenger testified either at the trial or in the hearing before this Court. According to the officers' trial testimony, they informed Anderson that they recognized him as a "narcotics man", and asked him to accompany them to the district police station for further investigation. They did not charge him with any crime, nor did they formally place him under arrest. The state trial court and appellate court found that Anderson consented to the policemen's request and voluntarily drove to the police station for further investigation. One officer rode with Anderson and his passenger, the other officer followed in the squad car.
Anderson locked his car when he arrived at the district police station. Approximately five to ten minutes after Anderson's arrival at the station, the police officers asked him for permission to search his car. There is no evidence nor does the Commonwealth of Pennsylvania claim that the officers informed Anderson of his constitutional right to be free from an unreasonable search and seizure or that any evidence found in the car might be used against him at trial. Anderson allegedly granted the officers permission to search his car, and gave them his car keys. He accompanied them to the car where he participated in their search by assisting them in removing the hubcaps from the tires. The policemen unlocked and searched the car; found and opened the plainly wrapped package; and discovered the contents to be narcotics paraphernalia and three bags of white powder. Anderson at no time objected to the search. He claimed he did not know how the package got under the front seat of his car.
After opening the package, the officers called in a narcotics analyst; the analyst found the powder to be a mixture of heroin hydrochloride, quinine hydrochloride, and reducing sugar. The policemen then formally charged Anderson with the felonious possession of narcotics and placed him under arrest at 5:55 A.M., three hours and fifty minutes after they had originally signalled him to stop his car.

1. ILLEGAL ARREST
The relator contends that prior to the search of his automobile at the police station he had already been arrested; that the arrest was not authorized by a warrant nor founded on probable cause and was thus an illegal seizure; and that the evidence produced by the subsequent search was therefore the fruit of an illegal seizure and should have been excluded at trial. See Wong Sun v. United States, supra.
Whether Anderson consented to the search of his car will be considered in part two of this opinion. For part one purposes, we will deal only with the legality of the interrogatory detention prior to the search. We note that after the search, the narcotics which were discovered gave the officers ample probable cause to believe Anderson guilty of *367 a crime and to make an arrest. Therefore the question now presented is whether Anderson was illegally detained prior to the search.
We hold that relator Anderson was never detained illegally. Our holding rests on two independently adequate conclusions: first, we conclude that the state court's finding that Anderson consented to the investigatory detention and that therefore his liberty was never restricted against his will is adequately supported by the evidence in the record; second, we conclude that even if Anderson submitted to investigation involuntarily, he was not "arrested" until after the search, and that the investigatory detention was a reasonable seizure within the requirements of the fourth amendment.

A. Voluntary Submission to Interrogation

The police officers clearly had constitutionally valid authority to stop Anderson's car when they suspected the driver to be intoxicated. United States v. Berry, 369 F.2d 386 (3d Cir. 1966). The relator contends that authority to detain terminated when the officers concluded that Anderson was not intoxicated; that the officers subsequently detained Anderson against his will and without probable cause to believe him guilty of any crime; and that such detention constituted an illegal arrest and therefore an unreasonable seizure.
The state courts on the trial and appellate levels found that Anderson had voluntarily consented to the officers' request for further interrogation at the station house; that the officers were not exercising any authority to deprive Anderson of his liberty; and that Anderson was therefore not under arrest. The Third Circuit on similar facts has apparently approved the proposition that an individual who consents to interrogation is not under arrest, and has indicated that the findings of voluntariness and no arrest should be upheld where based on substantial evidence. See United States v. Barbour, 372 F.2d 666, 670 (3d Cir. 1967).
The state trial court's finding of voluntariness was based on the only testimony presented at trial; the officers testified that they asked Anderson to accompany them to the police station, and that he agreed to do so. The relator did not testify nor did he offer any evidence to contradict the officers' testimony either at trial or in this habeas corpus proceeding. Relator's counsel now advances three reasons why this Court should reject the officers' trial testimony and upset the state's finding of consent to further interrogation: (1) the relator alleges that the officers' trial testimony was inconsistent with their pre-trial testimony; (2) the fact that one officer rode in Anderson's car to the station implies absence of consent; and (3) consent is inherently incredible under the facts and circumstances of the case.
The relator's contentions do not contain sufficient merit under the particular circumstances presented by this case.
First, the apparent inconsistency between the officers' trial and pre-trial testimony merely reflects on the credibility of the trial testimony. It appears that at the pre-trial hearing to suppress evidence, one of the officers indicated that he had "told" Anderson to come to the station house for further investigation, whereas the subsequent trial testimony indicated the officers' request and Anderson's consent. Which testimony was more credible was and is a question peculiarly within the province of the trial court to determine. That court, sitting without a jury (on defendant's waiver), concluded that the officers' trial testimony was more believable in this case. We cannot say that the conclusion was irrational or clearly erroneous. Relator's counsel points to the danger of fabricated consent testimony; the danger, if real, is one which should be dealt with at the trial level. There is no indication of such deliberate fabrication in the record before us.
Second, the fact that one officer rode to the station in Anderson's car does not necessarily imply that Anderson did not agree to further interrogation. Anderson *368 apparently agreed to go to the station house before the officer got into the back seat. The officer's presence may have indicated lack of conviction that Anderson would keep his agreement; but it does not contradict the testimony that consent was voluntarily given, nor does it imply that Anderson ever withdrew such consent. Indeed, the officer may have been entirely confident that Anderson would keep his agreement to go to the station house, but may have suspected that Anderson would throw the suspicious package away enroute. Thus the officer's presence may merely have been intended to assure that the package did not disappear, rather than to force the suspect to come to the police station. At any rate, the officer's presence was but one fact to be weighed and evaluated by the trier of the fact.
Third, we do not find Anderson's alleged consent to be incredible. A suspect may hope to quiet police suspicion or to obtain a more favorable sentence by cooperating as fully as possible, or he may be optimistic about his ability to beguile the investigators. Under the circumstances of this case, where there is no evidence of coercion and no evidence of any objection made by the suspect, we do not find the allegation of consent to be beyond reasonable credibility.
Therefore, we hold that the record reasonably supports the state courts' conclusion that relator Anderson voluntarily submitted to further station house investigation; that the police did not exercise any authority to restrain Anderson against his will; and that Anderson was not "under arrest" prior to the search of his automobile.

B. Involuntary Investigatory Detention

However, even if we accepted the contention that Anderson was involuntarily detained for further investigation, we would not hold such detention to be an unreasonable seizure within the meaning of the fourth amendment. We will agree that such detention would be a seizure; but under certain conditions we hold that the "seizure" of a person is constitutionally permissible even when not founded on probable cause to believe the suspect guilty of a crime.
Our conclusion rests on the distinction between an "arrest", which requires probable cause, and investigatory detention. Both events are, in our opinion, seizures; both seizures do restrict the suspect's liberty and both would presumably invoke the panoply of constitutional protections provided prospectively in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nevertheless, we consider it reasonable within the meaning of the fourth amendment to make a qualitative distinction between an arrest and an investigatory detention, and do hold investigatory detention permissible on grounds less stringent than the probable cause requirement for an arrest.
It is undeniably sound to require antecedent probable cause for an "arrest" kind of seizure. The booking and fingerprinting procedures attendant upon formal arrest are both harassing and humiliating. The mere fact that one has an arrest "record" can constitute a true liability. An arrest may frequently justify relatively lengthy detention. Furthermore, a legal arrest provides the police officer with a right to incidental search of the person arrested and, to some extent, of the place which he occupies; therefore, to require that a legal arrest be founded on probable cause is also to provide an additional and necessary safeguard against an unreasonable search and seizure.
The kind of investigatory detention presented by the facts of this case does not embarrass the suspect with the procedural machinery of a formal arrest. No public record of suspicion is made. Nor does the respondent Commonwealth claim that the investigatory detention provides any incidental right to search either the person or the premises under the immediate control of the suspect; the search of Anderson's car is contended to be justifiable only on the basis of *369 Anderson's consent to such search, rather than on any right to search incidental to the investigatory detention. Finally, the period of detention was very brief; five to ten minutes after Anderson arrived at the police station, the police searched his car and discovered the narcotics paraphernalia. After discovering the narcotics, the police clearly had probable cause justifying an arrest.
Because of the distinctions between arrest and the kind of investigatory detention which this case would present if Anderson had not voluntarily submitted to investigation, we conclude that such detention does not require antecedent probable cause. However, the detention remains a "seizure", and therefore must be reasonable. We hold the detention detailed by the facts of this case to be reasonable because it satisfied the following criteria:
(1) The officers had reasonable grounds to suspect (as opposed to believe) that Anderson might have been carrying narcotics. At two o'clock in the morning, during the course of their legitimate investigation of Anderson's sobriety, they (a) recognized him as a "narcotics man" and (b) observed a package which could contain narcotics partially hidden beneath the front seat. While the circumstances may not have presented probable cause to believe a crime had been committed, they were certainly sufficient to induce a reasonable suspicion of narcotics traffic; And
(2) the detention was reasonably brief. The officers detained Anderson only five to ten minutes at the police station before they found the package containing the narcotics; And
(3) the investigatory detention was necessary. If the police had released Anderson and then obtained a search warrant, their prospects for success would have been dim indeed. Anderson was in a car; he had been alerted to police suspicion; and he had an easily disposable package. If the police were ever to discover the contents of the package, they could not allow Anderson to leave their presence; both the suspect and the package had to be kept continuously within the officers' sight.
The Third Circuit has never, to our knowledge, ruled squarely on the constitutional permissibility of investigatory detention. The issue is presently pending argument and decision in the United States Supreme Court. See Peters v. New York, prob. juris. noted, 386 U.S. 980, 87 S.Ct. 1291, 18 L.Ed.2d 228 (1967); State v. Terry, 5 Ohio App.2d 122, 214 N.E.2d 114, cert. granted 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 989 (1967). Thus we may soon receive helpful clarification on a very difficult fourth amendment question. Our conclusion does find precedential support in the Second Circuit. For example, in United States v. Vita, 294 F.2d 524 (2d Cir. 1961), cert. denied 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962), the suspect had been questioned by officers in the station house for more than eight hours before he was formally arrested. Yet the court concluded that
"[E]ven if Vita had been involuntarily detained for questioning * * * we would not necessarily hold such detention to be an `arrest' * * * [when] federal officers detain a suspect for a short and reasonable period in order to question him." United States v. Vita, supra, at 529-530.
See United States v. Middleton, 344 F. 2d 78 (2d Cir. 1965); United States v. Bonnano, 180 F.Supp. 71 (S.D.N.Y. 1960), rev'd on other grounds sub nom. United States v. Bufalino, 285 F.2d 408 (2d Cir. 1960).
It is true that the Supreme Court has held the police restriction of an individual's liberty of movement to be an arrest. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). However, we do not believe that the Henry holding was intended to eliminate the distinction which we have found between arrest and investigatory detention. First, in Henry, the government conceded that an arrest had taken place. Second, the government had to rely on *370 the legality of the arrest to justify an incidental search and seizure of the evidence in question. When a search and seizure of property are allegedly justified as incidental to the seizure of an individual, the seizure of the individual should require antecedent probable cause. There is no contention in the case sub judice that the detention of Anderson justified any incidental search. Thus we believe the case to be distinguishable from the Henry opinion.
Therefore we conclude that even if Anderson submitted to investigatory detention involuntarily, he was nevertheless not arrested prior to the search of his automobile. Although the detention may technically be considered a fourth amendment seizure, it need not be founded on antecedent probable cause. Because it was founded on a reasonable suspicion that Anderson might have committed a crime, and was reasonably brief, and was necessary under the circumstances, the detention was a reasonable seizure within the protective boundaries of the fourth amendment.

2. CONSENT TO SEARCH AND SEIZURE
The relator further contends that even if he was not illegally arrested, the search of his automobile and the seizure of the narcotics package were unreasonable under the fourth amendment; that the relator did not intelligently and voluntarily consent to the search or seizure; and that therefore the package should have been excluded at the state trial.
The officers searching Anderson's car had no search warrant, nor was the search incident to an arrest. Therefore, the search and seizure were prima facie unconstitutional. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951). However, to overcome the presumption of unconstitutionality thus raised by the facts, the Commonwealth presented evidence at trial that Anderson had voluntarily consented to the search of his car, and had thereby waived his right to contest the constitutionality of the search and seizure. The state courts found that Anderson had freely and intelligently consented to the search. Commonwealth v. Anderson, 208 Pa.Super. 323, 328-329, 22 A.2d 495, 499 (1966).
The relator's habeas corpus petition is a collateral attack on the state courts' findings of free and intelligent waiver. A court judgment collaterally attacked carries a presumption of regularity; the burden of proof rests on the relator to establish that he did not competently and intelligently waive his constitutional right to be free from an unreasonable search. Johnson v. Zerbst, 304 U.S. 458, 468-469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); Bates v. Meadows, 358 F.2d 674, 675 (6th Cir. 1966) (see cases cited therein).
As noted above, the relator has never presented any evidence in this case, either at trial or in this proceeding. The only evidence in the record consists of the police officers' testimony. The Third Circuit has recently held that under the circumstances here presented, the question of the voluntariness of consent is a question of fact to be decided by the trier of fact; and where the trial court's finding of voluntary and effective consent to a search is adequately supported by the evidence in the record, that finding should not be disturbed. United States ex rel. Gockley v. Myers, 378 F.2d 398 (3d Cir. 1967).
We hold the trial court's finding of intelligent and voluntary consent to be supported adequately by the officers' testimony, the only evidence in the record. The officers' uncontradicted testimony reveals that Anderson had been at the station house but five to ten minutes when his consent to the search was requested and obtained; the brief period of detention substantiates the trial court's conclusion that Anderson was not coerced in any way. The fact that Anderson gave the officers his keys to unlock his car also implies consent. See United States ex rel. Gockley v. Myers, supra; Burge v. United States, 332 F.2d 171 (8th Cir. 1964). Anderson participated in the search by assisting the officers *371 in removing the car hubcaps; such affirmative assistance also implies consent. United States v. Smith, 308 F.2d 657, 664 (2d Cir.), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1962). Anderson was present during the entire search and never once objected. And finally, Anderson previously had been arrested and convicted three times for narcotics violations; he was not a novice with respect to the police station or police procedures.
The relator does raise one issue which has yet to receive detailed consideration by the courts: can an individual in police custody waive his right to be free from unreasonable search and seizure "intelligently" or "voluntarily" when he has not been informed by the police that he has that fourth amendment right?
The Supreme Court has held that an individual in police custody cannot be found to have voluntarily waived his fifth amendment right to remain silent unless the police have previously and specifically advised him of that right. Miranda v. State of Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Of course, we have already concluded that Anderson went to the station house voluntarily; thus technically, he may not have been in police custody, and therefore perhaps not entitled to any warnings about his constitutional rights. However, for purposes of this decision, we will assume that voluntary submission to interrogation does not necessarily strip the suspect of the rights which would otherwise attach when custodial interrogation and the adversary system begin to operate.
Thus we assume Anderson was in custody. The record reveals that at no time did the officers inform him of his right to remain silent, right to counsel, or right to be free from unreasonable search and seizure; nor did they advise him that anything found in his car might be used against him at trial. The question is whether the fourth amendment warning is an absolute prerequisite to a finding of an intelligent and voluntary waiver of the fourth amendment right.
The Miranda case does not speak to the problem of fourth amendment waiver; and even if Miranda should be read as general redefinition of the "intelligent" waiver requirements with respect to any constitutional waiver made in custody, Miranda's date of prospective application renders the decision inapplicable to the relator's case. The Miranda guidelines are available only to persons whose trials had not begun as of June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Relator Anderson's trial began in December, 1964. Nor does the Supreme Court's decision in Escobedo v. State of Illinois, supra, support the relator's contentions. Escobedo speaks neither to waiver requirements nor to the fourth amendment.
It has recently been held by our Brother, Judge Joseph S. Lord, III, that to sustain the burden of showing an intelligent waiver of a fourth amendment right, the prosecuting government must produce evidence showing either that the fourth amendment warning was given, or that the suspect was in fact already aware of his fourth amendment rights. United States v. Blalock, 255 F.Supp. 268, 270 (E.D.Pa.1966). See United States v. Nikrasch, 367 F.2d 740 (7th Cir. 1966). First, it should be noted that Blalock does not require the fourth amendment warning as an absolute prerequisite; evidence that the suspect was already aware of his fourth amendment rights would support a finding of intelligent waiver.[2] Second, the Blalock court determined the question *372 of waiver at the trial level, and thus made its own original findings of fact and conclusions of law. In this habeas corpus proceeding, we are reviewing a finding of fact made by another trial court. The fact of intelligent consent has already been found; we are merely to determine whether that finding is adequately supported by the evidence in the record. See Johnson v. Zerbst, 304 U.S. 458, 468-469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
The Third Circuit has recently dealt with the issue before us under similar factual circumstances and on a review of a habeas corpus petition. In United States ex rel. Gockley v. Myers, supra, the suspect had been arrested and was in the custody of the police. When the officers informed the suspect that they intended to obtain a search warrant to search his house, he told them that a warrant would not be necessary. He gave them his house keys and consented to the search. From the trial court record, it is apparent that the officers did not advise the suspect that he had a right to be free from a warrantless search, that a search warrant could only be issued on probable cause, or that any evidence found in the house could be used against the suspect. The suspect testified at trial that he had felt compelled to agree to the search. Yet the trial court found the consent to be an intelligent and voluntary waiver. The Third Circuit held that the consent was an effective waiver, observing that
"At most, the question of the voluntariness of consent in these circumstances was a question of fact to be decided by the trier of fact. * * * The trial judge found voluntary and effective consent to the search and that finding is adequately supported by the evidence." United States ex rel. Gockley v. Myers, 378 F.2d 398, 399-400 (3d Cir. 1967).
Despite the fact that the officers never advised Anderson of his fourth amendment rights, we have concluded that the state trial court's finding of effective waiver is adequately supported by the evidence; thus Gockley leads us to conclude that the relator's claim of ineffective waiver is without merit.

ORDER
And now, this twenty-ninth day of September, 1967, it is ordered that relator Anderson's petition be and hereby is denied.
NOTES
[1] See Commonwealth v. Anderson, No. 5 December Sessions 1964, Court of Quarter Sessions of Philadelphia County, Pennsylvania, March 29, 1965; Commonwealth v. Anderson, 208 Pa.Super. 323, 222 A.2d 495 (1966); relator's petition to the Supreme Court of Pennsylvania was refused. 85 Misc.Dock.No. 15 (1966).
[2] Even if the Blalock opinion could be read as absolutely requiring a fourth amendment warning (cf. Miranda v. State of Arizona, supra), the requirement would presumably be prospectively applied under the logic of Johnson v. State of New Jersey, supra. Blalock was decided in 1966; the relator's trial in the case now before us began in 1964 and concluded in 1965, and thus would not be affected by the Blalock ruling.