**UNITED STATES of America**

v.

**James J. TUGGLES.**

**Crim. A. No. 71–389.**

United States District Court,
E. D. Pennsylvania.

Oct. 27, 1971.

C. Oliver Burt, III, Philadelphia, Pa., for plaintiff.

William J. Brady, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant, James J. Tuggles, is charged with aiding and abetting the commission of a bank robbery in violation of 18 U.S.C. § 2113(a) and (b), and § 2. The defendant claims that a two-dollar bill was taken from him by an illegal search and seizure, and that certain statements were obtained illegally by the police and the F.B.I. He has moved to suppress the use of this evidence at trial.

I. *The seizure of the two-dollar bill.*

On May 21, 1971, a man robbed the Alvin Progressive Federal Savings and Loan Association. The stolen money in-

cluded bait money consisting of several two-dollar bills. The defendant came under suspicion because of a description of the robber and a tip that he had been seen with a large amount of money. On May 26, 1971, several officers went to the defendant's apartment to question him, but he was not home.

At approximately 4:30 that same afternoon Tuggles walked into the South Philadelphia Detective Division and asked Lt. James Lavin why the police were looking for him. Lt. Lavin said that they wished to speak with him concerning a bank robbery. He told Tuggles that he was not under arrest. Defendant indicated no hesitancy to remain.

Lt. Lavin then asked the defendant to count his money. Tuggles counted his money in front of Lt. Lavin. The police officer, who was aware that two-dollar bills were used as "bait money" in the robbery, noticed a two-dollar bill among the defendant's money. After Tuggles returned the money to his wallet, Lt. Lavin asked him to wait in the "holding room". Tuggles did this without complaint or hesitation. Lt. Lavin then obtained the serial numbers of the stolen money from the files, returned to Tuggles, and asked him to take out his money again. When the defendant took his money out, the two-dollar bill was not there. Lt. Lavin took the wallet and found the bill inside. The serial number on the bill was that of one of the stolen bills.

■ The Government does not seek to justify the seizure of the two-dollar bill on the grounds that it was incident to a lawful arrest. Tuggles had been advised that he was not under arrest; there was no indication of any threats or force; and Tuggles cooperated willingly without any hesitancy or complaint. *See* Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1967, rehearing en banc 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); Fisher v. United States, 324 F.2d 775 (8th Cir. 1963), cert. denied, 377 U.S. 999, 84 S.Ct. 1935, 12 L.Ed.2d 1049 (1964), rehearing denied,

379 U.S. 873, 85 S.Ct. 24, 13 L.Ed.2d 81 (1964). The defendant at this time was merely under investigation. Fourth Amendment protections, however, apply even in the investigatory stages. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

The Government justifies the seizure of the two-dollar bill by the "plain view" doctrine. "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). The Government argues that Lt. Lavin rightfully saw the two-dollar bill in plain view when Tuggles complied with a reasonable request and that he had probable cause to seize the bill as evidence.

■ There are some situations where the police may intrude into private areas for good reason and may properly seize evidence which is then in plain view. The Supreme Court has ruled that police who enter an impounded car in order to secure the windows and doors may seize any evidence discovered. Harris v. United States, *supra*. The Court in *Harris* specifically did not decide whether police may seize evidence when they have entered an impounded car pursuant to a police regulation requiring a thorough search in order to remove all valuables. A district court, however, has admitted evidence obtained by police in such a manner. United States v. Fuller, 277 F.Supp. 97 (D.D.C.1967). In *Fuller*, the Court reasoned that the police practice of removing all valuables in order to safeguard them was reasonable when it was not utilized as a search without a warrant. The Court noted that there was no indication that it was a search for evidence of a crime. *Cf.* Vauss v. United States, 125 U.S. App.D.C. 228, 370 F.2d 250 (1966).

The procedure employed by Lt. Lavin was reasonable under the circumstances. Lt. Lavin testified that he and many other officers generally request a suspect in the station to count his money

in front of the officer. This procedure is designed to protect the police against unfounded allegations of taking a suspect's money. It would also substantiate the claim of a person whose money was taken.

■ The scope of the intrusion was limited. Tuggles never surrendered control of the money, but merely counted it in the officer's presence. He was not required to spread the money to afford the officer a clear view of the contents. The limited scope indicates that the purpose was not the acquisition of evidence. It does not become a search for evidence in this instance merely because evidence of the crime, bank robbery, may appear when a suspect counts his money. The fact remains that the procedure was not used for the purpose of a search. *See* Fuller v. United States, *supra; cf.* Vauss v. United States, *supra.*

The behavior of the defendant indicates that he cooperated voluntarily with the procedure. Tuggles was free to leave at any time. He testified that he was told that he was not under arrest. He did not hesitate or complain when Lt. Lavin requested him to count his money, but complied willingly. There was no need to give the defendant any warnings since he was not in custody, the investigation had not narrowed to him, and the request was not for the purpose of obtaining evidence. *See* Bendelow v. United States, 418 F.2d 42 (5 Cir. 1968), cert. denied 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970); *see also* United States ex rel. Anderson v. Rundle, 274 F.Supp. 364 (E.D.Pa. 1967).

■ When Lt. Lavin seized the two-dollar bill he had probable cause to believe that it was contraband. Tuggles was under investigation for a bank robbery in which two-dollar bills were the "bait money". Two-dollar bills are extremely rare in general circulation.[1] The officer had probable cause to believe that the bill was one taken in the robbery of May 21, 1971.

The delay of a few minutes while the officer went to the files for the serial numbers did not affect the relation between Lt. Lavin's observation of the bill and the seizure. The seizure was so related in time, place and cause to Lt. Lavin's "plain view" of the bill, that it was a "plain view" seizure.

Lt. Lavin did not have to obtain a warrant before seizing the two-dollar bill. The police may seize evidence in plain view without a warrant when it is not practical to obtain one. United States v. Molkenbur, 430 F.2d 563 (8 Cir. 1970). Lt. Lavin did not have a warrant before the discovery and seizure because the discovery was unforeseeable. He could not wait to obtain a warrant after the discovery because the two-dollar bill was extremely susceptible to destruction, even in a police station, and Tuggles was free to leave at any time. *See* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The very significant possibility that evidence could be lost made it impractical to wait until a warrant was obtained.

For these reasons, the two-dollar bill was properly seized by Lt. Lavin and is admissible in evidence.

## II. *The Statements to the F.B.I. and the Police.*

The defendant spoke with police officers and the F.B.I. on three different occasions on May 26 and May 28, 1971. He has moved to suppress the contents of each of the conversations or statements. He claims that he was subjected to coercion and intimidation by long periods of confinement, that he was illegally detained before he gave such

---

[1]. According to information received from the Bureau of Engraving, the two-dollar bill has almost entirely disappeared from general circulation. The Bureau indicated that most banks would probably not be able to provide one if requested and that the most likely source of the bills is collectors. Two-dollar bills are not presently being printed.

statements, and that he was denied access to a lawyer on May 28, 1971.

Tuggles was given his constitutional warnings on at least three occasions during the investigation. These were given to him immediately preceding the three statements which are in issue. The warnings, two by the F.B.I. and one by the Philadelphia police, were on printed forms which are used by those agencies at all times. These forms informed the accused of his rights to remain silent and to have counsel as required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ The manner in which the warnings are given does not matter if the person understands his rights. Bell v. United States, 382 F.2d 985 (9 Cir. 1967); see United States v. Johnson, 426 F.2d 1112 (7 Cir. 1970); cf. United States v. Goldsmith, 274 F.Supp. 494 (E.D.Pa.1967). The F.B.I. on both occasions gave the waiver form to the defendant to read. The Third Circuit has recently held that a person who was given this form to read had been sufficiently warned under the *Miranda* standards if he understood what he read. United States v. Chapman, 448 F.2d 1381 (3 Cir., filed September 28, 1971). Tuggles was alert on both occasions. He demonstrated that he could understand the written warning on May 28, 1971, when he pointed to the sentence in the form concerning his right to a lawyer and asked if there was one available at the F.B.I. office. The warning given by Detective Connors on May 28, 1971, was given orally. Tuggles did not ask any questions and indicated to the officer that he understood. The defendant demonstrated during the hearing his ability to understand legal rights and procedures.[2] He has provided no evidence or testimony which indicates that he did not understand the warnings. The written and oral warnings adequately informed the defendant of his constitutional rights.

Tuggles spoke voluntarily with F.B.I. agents on May 26, 1971, at the South Philadelphia Detective Division. He was under no restraint. Lt. Lavin testified that he was free to go at any time. The defendant never indicated that he changed his admitted belief that he was not under arrest. He did not complain or demonstrate a desire to leave. Since he spoke with the agents freely, and was properly warned, the rule in Davis v. Mississippi, *supra,* was not violated. United States v. Holland, 438 F.2d 887 (6 Cir. 1971).

The defendant claims that the statements obtained from him on May 28, 1971, are tainted by an illegal detention on May 27, 1971. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) held that a statement which is the immediate result of an illegal arrest must be suppressed. Tuggles claims that the detention on May 27, 1971, was an illegal arrest which created an atmosphere of coercion and intimidation which resulted in the statements made on May 28, 1971.

■■ The fact that statements are made at some time after an illegal arrest does not necessarily mean that the statement is tainted by it. The proper test is whether the confession is sufficiently free of the oppressive circumstances surrounding an illegal arrest to assure that it was voluntary. Wong Sun v. United States, *supra* at 486, 83 S.Ct. 407. In *Wong Sun* six or seven agents broke down a door to follow the defendant into his bedroom and arrested him there without probable cause. The Court held that a statement taken at that time derived so immediately from the coercive circumstances that it was inadmissible.

■ The present case lacks similar oppressive and coercive circumstances even if there were an illegal arrest on May 27, 1971. Tuggles was not intimidated or harassed in any manner while at the police station on May 27, 1971.

2. This knowledge was most clearly and forcefully demonstrated when the defendant lectured the United States Attorney on the differences in arraignment procedures in the *state and federal systems.*

He was completely free from 4 P.M. on May 27, 1971, until 8:30 A.M. on May 28, 1971. He slept in his own bed that night. In *Wong Sun,* the Court found that the connection between an illegal arrest and a statement several days later became "so attenuated as to dissipate the taint." 371 U.S. at 491, 83 S.Ct. at 419. A confession given three hours after an illegal arrest has been found to be sufficiently free of oppressive circumstances to satisfy the requirements of *Wong Sun.* Rogers v. United States, 330 F.2d 535 (5 Cir. 1964). Tuggles' statements on May 28, 1971, were free from any coercive taint which might have resulted from his detention on May 27, 1971.

 The defendant's next claim is that the arrest on May 28, 1971, was illegal and that the confessions obtained incident to that arrest should be suppressed. An arrest is legal, even without a warrant, where the officers have knowledge of facts and circumstances sufficient to warrant the belief that the person has committed a crime. *See* Ker v. State of Cal., 374 U.S. 23, at 34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

Timothy Johnson made a confession on May 27, 1971, in which he implicated Tuggles in the May 21, 1971, robbery. On May 26, 1971, the police seized from the defendant a two-dollar bill taken in the robbery. These facts were sufficient to give Detective Connors probable cause to arrest the defendant on May 28, 1971.

 Defendant's final contention is that the F.B.I. agents continued to interrogate him at the F.B.I. office even though they knew that he had obtained a lawyer. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) held that the police may not deprive a person in custody of the opportunity to consult with his attorney.

The F.B.I. agents, prior to Tuggles' confession, had no knowledge that the defendant either had a lawyer or was seeking one. Agent Walsh spoke to Tuggles' sister at the police station that morning. He testified that she did not indicate that she was going to get a lawyer for her brother. On the trip to the F.B.I. office the agents informed the defendant of his right to have counsel appointed, but he did not indicate that he was in the process of obtaining private counsel. Tuggles' claim that Agent Davis, a highly trained F.B.I. agent, told him that he did not need an attorney is incredible. When he was given the waiver form to read at the F.B.I. office he asked if the F.B.I. had a lawyer there. He did not indicate at any other time any desire to speak to an attorney although he was obviously aware of this right. In Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) there was no violation of *Escobedo* when police continued vigorous questioning after the defendant said "I think I had better get a lawyer before I talk any more." *See* Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136 (1964). In the present case, the defendant did not indicate even that strong a desire to see an attorney. The agents did not deprive the defendant of his right to an attorney.

Accordingly, for the reasons set forth above, defendant's motion shall be denied.