COMMONWEALTH *vs.* DAVID A. HAEFELI.

Suffolk.    September 14, 1971. — March 2, 1972.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Search and Seizure.    Probable Cause.    Constitutional Law,* Search
and seizure.

Where a police officer knew that two individuals, whom he had just
arrested inside an office for passing worthless checks, had given
him false names that did not match the name of a man the officer
knew to be the registered owner of an automobile the two had
parked outside the office before their arrest, and one of the two
individuals, a girl, asserted that she was the owner of the auto-
mobile, it was reasonable for the officer to enter the automobile and
examine the glove compartment without a warrant for the limited
purpose of investigating ownership [280-281]; and when in the
course of this limited intrusion the officer saw objects in plain
view which he had probable cause to believe were stolen, his war-
rantless seizure of such objects was lawful [280–282].
A certain affidavit by a police officer in support of an application for
a warrant to search a specified apartment was sufficient to estab-
lish probable cause to believe that stolen mail, checks and identifi-
cation material mentioned in the application would be found in
the apartment.   [284-286]

INDICTMENTS found and returned in the Superior
Court on April 10, 1970.

A pre-trial motion to suppress was heard by *Roy,* J.

*Alexander Whiteside, II* (*Reuben Goodman* with him)
for the defendant.

*Robert Snider,* Assistant District Attorney, for the
Commonwealth.

QUIRICO, J.    The defendant was charged in each of
seven indictments with a separate crime of receiving
stolen property knowing it to have been stolen.   One in-
dictment involved blank checks, and the others involved
various pieces of mail containing some blank checks, can-

celled checks and other papers. The defendant was found guilty by a jury on all indictments after a single trial. The trial judge thereupon adjudged him "a common receiver of stolen goods" and imposed upon him a consolidated sentence of a minimum of three years and a maximum of seven years at the Correctional Institution at Walpole. G. L. c. 266, § 62. The cases are before us on the defendant's amended bill of exceptions.

The only exception argued by the defendant is that taken to the denial of his pre-trial motion to suppress certain evidence which the police had seized in part from an automobile and in part from his apartment. The defendant argues that after he had been arrested a police officer unlawfully searched without a warrant an automobile which he had driven before his arrest. He argues that the search of his apartment, although conducted pursuant to a warrant, was unlawful because of alleged deficiencies in the affidavit contained in the application for the warrant.

THE SEARCH OF THE AUTOMOBILE.

The defendant was arrested by Boston police officer Robert E. Hughes on January 12, 1970. There was evidence of the following events and occurrences leading up to and immediately following the arrest.

On November 24, 1969, the apartment of Miss Mona Lacy at 1152 Commonwealth Avenue in Boston had been broken into and ransacked. Articles stolen from the apartment included the following: a check cashing courtesy card issued to Miss Lacy by the Star Market Co., some checks with her name and address printed on them issued by the Barclay Bank and Trust Company of Boston, her driving license issued by the State of Delaware, and six or seven credit cards or identification cards issued to her in her name by a bank, a public library, stores, clubs and other organizations. This break and theft, and numerous thefts from the United States mail, were under investigation by Officer Hughes.

Officer Hughes was also investigating a series of offences involving the passing of worthless checks. A number of such checks were cashed by a girl using the name of Mona Lacy at a Star Market Co. store which had a system of photographing persons cashing checks there. Officer Hughes saw this same girl in about twenty different photographs, and he circulated the photographs, or reproductions of them, to certain business people in the general vicinity where the worthless checks had been cashed.

Officer Hughes knew the defendant from some prior experiences. He had information that the defendant was involved in the passing of worthless checks. He received information from many informants, including one or more of the victims of the worthless check passing, that the girl shown in the photographs mentioned above was accompanied by a male. The girl and the male were seen leaving various Star Market Co. stores, banks and other stores in Boston and vicinity. The informants gave Officer Hughes a description of the male which fitted the defendant's general description, including his haircut and mustache, which presented definitely identifiable features.

Officer Hughes had also received information about the registration number of an automobile in the course of his investigation of the check passing operations of the girl and male in question. He learned that this number had been issued to a man named Kaler, and that the automobile had not been reported stolen.

One of the places where Officer Hughes either left or showed a photograph of the girl who passed the worthless checks was a real estate office on Commonwealth Avenue, in Boston. On January 12, 1970, the person in charge of that office called Officer Hughes and told him that a girl resembling the one in the photograph had been in the office and intended to return. Officer Hughes went to the office and "staked out" the area. About 5:45 P.M. he saw an automobile bearing the registration mentioned above park on Commonwealth Avenue about fifty feet

from the office. The driver of the automobile was a male fitting the description previously given to Officer Hughes, and the officer recognized him as the defendant Haefeli. He also recognized a girl passenger in the automobile as the girl shown in the photographs mentioned above. Both occupants of the automobile went into the real estate office.

Officer Hughes followed the two persons into the office and questioned them. He asked the girl whether her name was Mona Lacy, which is the name she had used in passing worthless checks. She "looked awfully startled" and answered that it was not. She was in fact Janice Kaler but the officer did not know that. He asked her what her name was and she gave a name other than Janice Kaler. She also said that the automobile in which they had arrived was hers. He then asked the defendant his name and he answered that it was "David Becker." At that time Officer Hughes placed both the girl and the defendant under arrest. He knew then that the defendant was in fact David Haefeli, but he did not know that the girl was Janice Kaler, the daughter of the person to whom the registration plates on the automobile had been issued, and that she had her father's permission to use the automobile.

A couple of minutes after making the arrests, Officer Hughes borrowed a flashlight, left the office and went to the automobile to try to find out who its true owner was. He shone his flashlight through the closed window of the automobile. On the front floor, on the passenger side of the automobile, he saw a manila envelope containing a quantity of bank checks, about one or two inches of which were exposed. He could not see anyone's name on the checks. He opened the door and took the checks out. The checks were for use on the Capitol Bank & Trust Company in Boston, and had the name "Joseph Shain" imprinted on them. They were the subject of indictment No. 48,369 on which the defendant was convicted.

After seizing the Shain checks, Officer Hughes pursued his search of the automobile in an effort to determine

its true owner, and in so doing he looked in the glove compartment for the registration. There he found and seized an identification card issued to Mona Lacy by the Star Market Co. for the purpose of cashing checks at one of its stores.

### THE VALIDITY OF THE AUTOMOBILE SEARCH.

We first consider the validity of the police search of the automobile and the resulting seizure of the bank checks belonging to Joseph Shain and the identification card belonging to Mona Lacy. Admittedly Officer Hughes had no search warrant to search the automobile, and the Commonwealth conceded in argument before this court that the search was not incident to the arrest of the defendant and Janice Kaler. Thus narrowed, our consideration must focus on whether there were exigent circumstances which permitted Officer Hughes to search the automobile without a warrant. Basically, the question reduces itself to whether his action constituted an "unreasonable" search and seizure of the kind prohibited by the Fourth Amendment to the United States Constitution. *United States* v. *Roberts,* 434 F. 2d 1016, 1017 (5th Cir.).

"[T]he reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of . . . [the United States Supreme] Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees." *Ker* v. *California,* 374 U. S. 23, 33. We must therefore examine the Federal judicial precedents on this subject.

One of the earliest cases decided by the United States Supreme Court on the validity of a warrantless search of an automobile was *Carroll* v. *United States,* 267 U. S. 132. There the court said, at 153, that "the guaranty of freedom from unreasonable searches and seizures by the

Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." The court upheld the search after declaring, at 155–156, that "[t]he measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported." To emphasize that it was not basing its decision on the existence of probable cause to arrest the driver or occupants of the automobile, the court said, at 158–159: "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. . . . The character of the offense for which, after the contraband liquor is found and seized, the driver can be prosecuted does not affect the validity of the seizure." The rule of the *Carroll* decision was followed in upholding warrantless searches of automobiles in *Husty* v. *United States,* 282 U. S. 694, *Scher* v. *United States,* 305 U. S. 251, and *Brinegar* v. *United States,* 338 U. S. 160.

In *Chambers* v. *Maroney,* 399 U. S. 42, two men carrying guns robbed a gasoline service station attendant and then fled in a blue compact station wagon in which there were two other men. This information and a description of a sweater and a trench coat worn by the two robbers were broadcast over the police radio. Within an hour a light blue compact station wagon answering the description and carrying four men was stopped by the police about two miles from the service station. One of the men was wearing a sweater fitting the description of

that worn by one of the robbers, and a trench coat was found in the car. The four occupants were arrested. The station wagon was not searched at the place of arrest, but was driven to the police station where it was searched. The search resulted in the discovery and seizure of two guns and ammunition, and some money and articles taken in the robbery. As a preliminary matter, the court held that the search at the police station was not "incident to" the arrests. The court nevertheless upheld the search and seizure on another ground thus stated in the court's own language, at 47–52: "[T]here was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money. . . . The Court [in the *Carroll* case] also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest. . . . Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. . . . In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible. . . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue

to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

The next and most recent occasion on which the United States Supreme Court discussed in depth the subject of warrantless searches of automobiles was the decision of *Coolidge* v. *New Hampshire,* 403 U. S. 443, decided June 21, 1971, and extending over eighty-five printed pages. While this discussion may not have been necessary to the decision of that case, five of the Justices concluded that the seizure of an automobile allegedly used in the commission of a homicide was illegal, a warrant for its seizure having been held invalid and the case not coming within any of the exceptions to the warrant requirement. This result was reached in a lengthy opinion in which four Justices joined, and in a short concurring opinion by another Justice. Three of the other four Justices wrote opinions in part concurring and in part dissenting, and the fourth joined in one of those opinions. A large part of the principal opinion and of the dissenting opinions is devoted to a review of the earlier cases, especially the *Carroll* and *Chambers cases,* and in expressing divergent views on what those cases decided.

A reading of all of the opinions written in the *Coolidge* case indicates that the Justices of the United States Supreme Court were in seemingly irreconcilable disarray as to what the law was or ought to be with reference to the warrantless search of an automobile.[1]

---

[1] The divergent views of some of the Justices seemed to result from their opposition to the "Exclusionary Rule," so-called, as applied to the States. In his concurring opinion, Mr. Justice Harlan said, at 409–492: "From the several opinions that have been filed in this case it is apparent that the law of search and seizure is due for an overhauling. State and federal law enforcement officers and prosecutorial authorities must find quite intolerable the present state of uncertainty, which extends even to such an everyday question as the circumstances under which police may enter a man's property to arrest him and seize a vehicle believed to have been used during the commission of a crime. I would begin this process of re-evaluation by overruling *Mapp* v. *Ohio,* 367 U. S. 643 (1961), and *Ker* v. *California,* 374 U. S. 23 (1963). The former of these cases made the federal 'exclusionary rule' applicable to the States. The latter forced the States to follow all the ins and

Commonwealth *v.* Haefeli.

The numerous decisions in which the United States Courts of Appeals of the various circuits have cited and attempted to interpret and apply the *Carroll* and *Chambers* decisions are in similar disarray. They contain such divergent interpretations and applications that no useful purpose would be served by considering any of them in detail. The decisions cited in the margin [2] will suffice to illustrate the extent of the judicial attention devoted to this question and the disparate views which have emerged.

Having traveled the length of the high road of the leading Federal judicial precedents without finding any very helpful signs pointing out the present state of the law on the subject of warrantless searches of automobiles, we return to our starting point and make a new start seeking only to determine whether Officer Hughes's search of and seizure from the automobile in this case

---

outs of this Court's Fourth Amendment decisions, handed down in federal cases. . . . Until we face up to the basic constitutional mistakes of *Mapp* and *Ker*, no solid progress in setting things straight in search and seizure law will, in my opinion, occur. . . . Recent scholarship has suggested that in emphasizing the warrant requirement over the reasonableness of the search the Court has 'stood the fourth amendment on its head' from a historical standpoint." In his dissenting opinion Mr. Chief Justice Berger said in part, at 492–493: "I am not prepared to accept the proposition that the Fifth Amendment requires the exclusion of evidence seized in violation of the Fourth Amendment. . . . This case illustrates graphically the monstrous price we pay for the Exclusionary Rule in which we seem to have imprisoned ourselves." The Chief Justice then cited his dissent in *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U. S. 388, 411, another case decided the same day. The *Bivens* case involved the application of the Exclusionary Rule in the Federal courts, and at 418–419 of his dissent the Chief Justice referred to and amplified his dissent in the *Coolidge* case.

[2] *Simpson* v. *United States*, 346 F. 2d 291 (10th Cir.). *United States* v. *Nikrasch*, 367 F. 2d 740 (7th Cir.). *Cotton* v. *United States*, 371 F. 2d 385 (9th Cir.). *United States* v. *Graham*, 391 F. 2d 439 (6th Cir.), cert. den. sub nom. *Graham* v. *United States*, 393 U. S. 941. *Pennington* v. *United States*, 392 F. 2d 421 (5th Cir.), S. C. reh. sub nom. *United States* v. *Pennington*, 441 F. 2d 249 (5th Cir.), cert. den. 404 U. S. 854. *Leffler* v. *United States*, 409 F. 2d 44 (8th Cir.). *United States* v. *Johnson*, 413 F. 2d 1396 (5th Cir.). S. C. reh. en banc, 431 F. 2d 441 (5th Cir.). *United States* v. *Roberts*, 434 F. 2d 1016 (5th Cir.). *United States* v. *Lowery*, 436 F. 2d 1171 (5th Cir.), cert. den. sub nom. *Lowery* v. *United States*, 401 U. S. 978. *United States* v. *Powers*, 439 F. 2d 373 (4th Cir.), cert. den. sub nom. *Powers* v. *United States*, 402 U. S. 1011.

were "unreasonable" within the meaning of the Fourth Amendment. We hold that they were not.

When Officer Hughes effected the arrest of the defendant and Janice Kaler, both gave him false names which did not match the name of the person he knew to be the registered owner of the automobile. Yet Janice Kaler, with her true identity thus concealed, asserted that *she* was the owner of the automobile. Moreover, Officer Hughes recognized Haefeli, and therefore knew that he had given a false name. Faced with this unexplained false name and the discrepancy regarding the ownership of the automobile, Officer Hughes had reasonable grounds to suspect that the automobile was stolen or that it was being used without authority.[3] See *Commonwealth* v. *Chaisson,* 358 Mass. 587, 590.

Within two minutes after making the arrests, Officer Hughes went outside to the automobile and with the aid of a flashlight he looked inside. In so doing, he saw the manila envelope with checks protruding on the floor of the front passengers seat. That did not constitute a search of the automobile. *Commonwealth* v. *LaBossiere,* 347 Mass. 384. See *Commonwealth* v. *Wilson,* 360 Mass. 557, 560. Seeing the checks, when combined with all of the information which Officer Hughes already possessed, was sufficient to constitute probable cause to search the automobile. See *Commonwealth* v. *Gizicki,* 358 Mass. 291, 294–295. The defendant appears to concede this when he states in his brief that "it appears evident that the facts known to Officer Hughes would have provided a sufficient showing of probable cause for a search — at no time during the hearing on the motion to suppress was it suggested that Officer Hughes lacked sufficient information to establish probable cause." While making that concession, the defendant argues that the existence of probable cause is not enough to justify a warrantless search, and that there must also be some exigency which

---

[3] It does not appear from the record whether either Haefeli or Janice Kaler produced a driving license or registration certificate at the time of their arrest. See G. L. c. 90, § 11, as amended.

makes it unnecessary to obtain a warrant. We need not decide whether there must be a concurrence of both probable cause and such an exigency because we have already concluded that there was probable cause, and we conclude further that there was such an exigency.

We hold that the situation which existed before Officer Hughes saw the checks on the floor of the automobile constituted an exigency which justified his warrantless search for anything bearing on the ownership or right to use the automobile. Thus the justification for his search without a warrant did not derive from the fact that he observed the checks. His intrusion into the unlocked automobile and glove compartment for the limited purpose of investigating ownership was not unreasonable in the circumstances. As a law enforcement officer he had a duty to pursue his investigation of highly suspicious circumstances which strongly indicated either a theft or unauthorized use of the automobile by the persons he had arrested. If he left the automobile while he tried to obtain a search warrant, he could not be sure that it would be there when he returned. On all of the facts, reasonableness dictated that he do just what he did. His search of the automobile was therefore lawful.

While Officer Hughes was lawfully searching the automobile for anything bearing on its ownership or the right to use it, he came upon Mona Lacy's check cashing courtesy card and Joseph Shain's checks, all of which he had reasonable cause to believe had been stolen. He thus had the right to seize the card and checks even though they were not the original object of his search. Where, as here, the intrusion which brings the police within plain view of an object they have reasonable cause to believe was stolen is lawful, their seizure of such object is also lawful, and it is immaterial whether the lawful intrusion is supported by a warrant or is under a recognized exception to the warrant requirement. *Coolidge* v. *New Hampshire*, 403 U. S. 443, 465. See *Harris* v. *United States*, 390 U. S. 234, 236. "What the 'plain view' cases have in common is that the police officer in each of them had a

prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification — whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused — and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge* v. *New Hampshire,* 403 U. S. 443, 466. See *Commonwealth* v. *Wojcik,* 358 Mass. 623, 626–630.

If the decision in *Chambers* v. *Maroney,* 399 U. S. 42, can be considered a reliable precedent, despite the criticism and questions about it in *Coolidge* v. *New Hampshire, supra,* it probably furnishes an additional or alternative ground for upholding the warrantless search of the automobile in this case. Because in both the *Chambers* case and the present case the automobiles were searched in circumstances which were not incident to an arrest, the searches were not justified by that exception to the general requirement of a warrant. In the *Chambers* case the police had probable cause to believe that the automobile contained weapons used in the commission of a robbery and some of the proceeds of the crime. In the present case, at least after seeing the checks protruding from an envelope on the floor of the automobile, Officer Hughes had probable cause to believe that the checks were the fruits of prior thefts which the police were investigating and that they were instruments of the type used in the commission of the crimes of forging, uttering and passing worthless checks which they were also investigating. In both cases, therefore, the police had reasonable cause to believe that the automobiles contained stolen goods and instruments used or to be used in the

commission of a crime. Also, both automobiles were on public highways, and the drivers and all other occupants had been placed under arrest before the searches were made. Additionally, in the present case there were the questions of the ownership of the automobile, of its possible theft by the persons arrested or of their use of it without authority of the owner.

For all of the reasons discussed above, we hold that there was no error in the denial of the defendant's motion to suppress the articles seized by Officer Hughes during the search of the automobile.

THE SEARCH OF THE DEFENDANT'S APARTMENT.

After arresting the defendant and Janice Kaler, Officer Hughes, either by reason of what he knew previously or what was said to him by the defendant, went to a rooming house at 901 Beacon Street, Boston, for the purpose of ascertaining the defendant's exact place of residence. He talked with the rooming house proprietor and learned that the defendant occupied room number 3 on the first floor at that address. He gave the proprietor a description of Janice Kaler and was told that she occupied room number 3 jointly with the defendant. Thereupon a Boston police detective working on the case went to the Municipal Court of the Roxbury District and applied for a warrant to search the defendant's room.

The search warrant was issued and it was executed at 8:30 P.M. on the same day the defendant was arrested. In the execution of the warrant the police found and seized all of the articles which supported the defendant's convictions for receiving stolen goods under indictments Nos. 47,997, 48,359, 48,362, 48,366, 48,367, and 48,368. The checks involved in the seventh indictment, No. 48,369, were those which had been found in the automobile. All of the articles seized under the search warrant were admitted in evidence against the defendant over his objection and exception, after denial of his motion that they be suppressed.

THE VALIDITY OF THE SEARCH OF THE DEFENDANT'S
APARTMENT.

The defendant argues that his motion to suppress the articles seized in his apartment pursuant to the search warrant should have been allowed on the sole ground that "[th]e affidavit in support of Detective Sullivan's application for a search warrant was insufficient to establish probable cause for the belief that stolen mail, checks and identifiation would be found in room number three at 901 Beacon Street." A copy of the application including the challenged affidavit is set forth in the margin.[4]

In applying for a search warrant in this case, it was not necessary for the Commonwealth to provide an affidavit which convinced the issuing magistrate beyond a reasonable doubt that there were stolen articles in the

---

[4]                                        "January 12, 1970
I, William H. Sullivan, being duly sworn, depose and say:
1. I am a detective, Boston Police Department, District 14
2. I have information based upon photographs of a female subject whom I arrested this date for Receiving Stolen Property and also for Forging & Uttering stolen checks and also of a male subject whom I arrested in her company for Receiving Stolen Property. I have probable cause to believe, as a result of evidence found on these subjects (in their possession) at the time of their arrest, that these two subjects have been involved in the larcenies of mail (U.S.) on this District. These subjects (David Haefeli, 21 years, 901 Beacon Street, Boston and Janice Kaler, 19 years of 901 Beacon St., Boston) had identification in the name of one Mona Lacey, 1152 Commonwealth Ave., Allston — whose apartment had been burglarized on Nov. 24, 1969; checks and identification were reportedly stolen in this break.
3. Based upon the foregoing reliable information — and upon my personal knowledge and belief — and attached affidavits — there is probable cause to believe that the property hereinafter described — has been stolen — or is being concealed, etc. and may be found in the possession of David A. Haefeli and Janice Kaler at premises 901 Beacon St., Boston.
4. The property for which I seek the issuance of a search warrant is the following: Stolen mail, checks and identificaiton, such as driver's licenses, credit cards, charge plates.
WHEREFORE, I respectfully request that the court issue a warrant and order of seizure, authorizing the search of Room #3, on the first floor of a 3 story brick rooming house numbered 901 Beacon St., Boston and directing that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

                                        William H. Sullivan
                                        Signature of Applicant"

defendant's apartment. *Commonwealth* v. *Stewart,* 358
Mass. 747, 749. "[T]he issue in warrant proceedings is
not guilt beyond reasonable doubt but probable cause for
believing the occurrence of a crime and the secreting of
evidence in specific premises". *United States* v. *Harris,*
403 U. S. 573, 584. *Commonwealth* v. *Lillis,* 349 Mass.
422, 424. *Brinegar* v. *United States,* 338 U. S. 160, 175–
176. *Jones* v. *United States,* 362 U. S. 257, 271. *Rugen-
dorf* v. *United States,* 376 U. S. 528, 533. Thus the ques-
tion presented for our decision is whether the application
and affidavit for the search warrant were legally suffi-
cient to establish probable cause to believe that stolen
mail, checks and identification material, including such
items stolen from the apartment of Mona Lacy at 1152
Commonwealth Avenue on November 24, 1969, would be
found in room number 3 at 901 Beacon Street in Boston.
In answering this question, we must interpret the affi-
davit "in a commonsense and realistic fashion," *United
States* v. *Ventresca,* 380 U. S. 102, 108, "on the basis of a
consideration of all of its allegations as a whole, and not
by first dissecting it and then subjecting each resulting
fragment to a hypertechnical test of its sufficiency stand-
ing alone." *Commonwealth* v. *Stewart,* 358 Mass. 747,
751. *Commonwealth* v. *Brown,* 354 Mass. 337, 345. In
short, "[a] policeman's affidavit should not be judged as
an entry in an essay contest. It is . . . entitled to common-
sense evaluation." *Spinelli* v. *United States,* 393 U. S.
410, 438–439 (dissenting opinion).

Judged by the standards stated above, we hold that
"[t]he information in the affidavit taken as a whole to-
gether with inferences which reasonably could be drawn
from the information by a judicial mind may justify the
conclusion that probable cause exists" to believe that
checks and identification material stolen from the apart-
ment of Mona Lacy at 1152 Commonwealth Avenue, on
November 24, 1969, could be found in room number 3 at
901 Beacon Street. *Commonwealth* v. *Brown,* 354 Mass.
337, 345. The affidavit in this case states that the affiant
is a detective with the Boston police department, that

earlier on that day he arrested a female subject for receiving stolen property and for forging and uttering stolen checks; that he also arrested a male in her company for receiving stolen property; that at the time of their arrest they had in their possession identification material in the name of Mona Lacy which, with checks, had been stolen from the latter's apartment on November 24, 1969; and that the subjects he arrested were "David Haefeli, 21 years, 901 Beacon Street, Boston and Janice Kaler, 19 years of 901 Beacon St., Boston." All of this information was based on his personal knowledge. It is reasonable to infer that as a result of placing them under arrest he learned the address at which they lived, if he did not know it previously. It is also reasonable to infer, from their possession of Mona Lacy's identification material, that they had either stolen it themselves from the Lacy apartment or had received it from the thief knowing it to have been stolen, and that in either event the other articles stolen from the apartment might be found where they lived. This much the officer believed and recited in his affidavit.

The defendant argues in his brief that "[a]s the affiant has not revealed the basis of his belief [that the defendant and Janice Kaler were involved in larcenies], his conclusion cannot be credited." In support of this argument the defendant cites *Spinelli* v. *United States*, 393 U. S. 410, 416. The affidavit before us makes clear that the basis of the affiant's belief was in large part his experience earlier in the day in arresting the two persons and finding in their possession something he knew had been stolen from the Lacy apartment. That is sufficient to support the issuance of the search warrant. We note that in any event the *Spinelli* decision is of questionable validity on this point in view of the United States Supreme Court's later comments about that decision in *United States* v. *Harris*, 403 U. S. 573, 581–583, and concurring opinions, 585–586.

There was no error in the denial of the defendant's

motion to suppress the articles obtained in the execution of the warrant.

*Exceptions overruled.*