## COMMONWEALTH vs. JOSEPH NAVARRO.

Berkshire.   September 11, 1973. — May 1, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Search and Seizure.    Probable Cause.    Evidence,* Relevancy and
   materiality.    *Practice, Criminal,* Mistrial, Judicial discretion,
   Sentence.  *Witness,* Expert.  *Burglarious Implements.   Firearm.
   Breaking and Entering.*

Where, in a criminal case involving charges of possession of burglar's
   tools, unlawful carrying of a firearm in a vehicle, and breaking
   and entering in the night time with intent to commit a felony,
   it appeared that a police officer, after being notified to be on the
   lookout for a described car from a certain area, noticed a parked,
   unlocked car like the one described near a cafe in which, a few
   hours before, there had been a breaking and entering and tamper-
   ing with a safe, he was held to have been justified in entering the
   car in order to look at its inspection sticker and ascertain the
   area it had come from [217-221]; and the fact that in so doing he
   discovered a loaded handgun on the front seat, in conjunction
   with certain facts previously known to the police concerning the
   crime at the cafe, constituted probable cause for a warrantless
   search of the car thereupon made at a station house, and burglar's
   tools, another handgun, and a driver's license of the defendant
   found in the search, together with the handgun discovered on the
   front seat, on which were finger prints identified, as were others
   found in the cafe, as those of the defendant, were admissible at
   trial [222].
On the record of a criminal trial, there was no error in admitting in
   evidence generally clothing of an accomplice of the defend-
   ant.   [222-223]
No abuse of discretion appeared in a criminal case in denying a
   motion for a mistrial based on violation of an order of the judge
   for sequestration of witnesses.   [223]
A finding by the trial judge in a criminal case that a police officer
   was qualified as an expert in fingerprint work was warranted by
   the evidence.   [223-224]

Evidence warranted findings that the defendant in a criminal case was guilty of breaking and entering a cafe in the night time with intent to commit a felony, of possession of burglar's tools, of unlawfully carrying a firearm in a vehicle, and of unlawful possession of firearm ammunition. [224]

The defendant in a criminal case was entitled to have counsel present when the judge vacated one of several sentences of imprisonment to be served concurrently and substituted a fine, and where such action was taken in the absence of counsel the substitute sentence must be vacated and the defendant resentenced on the charge for which it was imposed. [224]

INDICTMENTS found and returned in the Superior Court on April 12, 1971.

The cases were tried before *Taveira*, J.

*Alfred Paul Farese* for the defendant.

*John T. McDonough*, Special Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J.   The defendant was indicted for possession of burglar's tools (No. 11283), unlawfully carrying a firearm under his control in a vehicle (No. 11286), breaking and entering in the night time with intent to commit a felony (No. 11287), and unlawful possession of firearm ammunition (No. 11288).   He was tried, subject to G. L. c. 278, §§ 33A-33G, by a jury, was found guilty on all indictments, and was sentenced to various terms at the Massachusetts Correctional Institution, Walpole, to be served concurrently.   The day after the sentences were imposed, the trial judge vacated the sentence imposed on indictment No. 11288, and substituted a fine of $100. The case is here on the defendant's appeal with assignment of errors.

There was evidence that in the early morning hours of March 18, 1971, a cafe on Woodlawn Avenue in Pittsfield was broken into and an outer door to a safe was pried open.   (An inner door remained intact, and the contents of the safe were undisturbed.)   Police arrived at the scene at 3:30 A.M.   One officer followed footprints in the snow from the rear of the cafe in a westerly direction through a parking lot, across a street, through back yards

and across two more streets into a back yard, where he saw a codefendant, Tosi, sitting on the back steps of a house, panting, perspiring and exhausted. There was dust on Tosi's trousers, similar in color to that found by the police in front of the safe at the cafe. His heels bore distinctive marks first noticed in the footprints. He was arrested, and searched; his wallet contained an automobile registration in his name. Officers in the field were instructed by radio bulletin to be on the lookout for Tosi's 1968 black Buick. Tosi was also traced to a motel on the Pittsfield-Lenox road, where he had checked in on March 16 with another man. An officer testified that the motel proprietor told him that the car in which Tosi had arrived was not a black 1968 Buick, but rather a very dirty white 1969 Buick. Following that conversation with the motel proprietor, a second police radio transmission instructed officers to disregard the first transmission and to look out for a vehicle of the new description from the Boston area. At about 5:45 or 6:00 A.M. an officer in a cruiser who had heard the transmission noticed a very dirty white 1970 Buick hardtop parked on Woodlawn Avenue about seventy-five feet from the cafe, among about fifty other parked cars. (There was a General Electric Company factory nearby which employed a night shift.) The officer testified that through the window he saw on the front seat what appeared to be, and what turned out to be, a blank Connecticut driver's license protruding from an envelope; that he opened the driver's door, which was unlocked; that his purpose in entering the car was to see if it was from the Boston area; that he leaned across the seat to look at the back of the inspection sticker; and that in doing so he saw a handgun on the seat. He also examined the envelope from which the license protruded and saw that it contained several blank Connecticut licenses, and a completed New Jersey driver's license and a blank New Jersey driver's license bearing the same license number as the completed one. The car was

towed to the police station, was identified by the motel proprietor and was thoroughly searched. The trunk contained burglar's tools and another handgun, and the glove compartment contained the defendant Navarro's driver's license. Fingerprints from the handgun which was found on the driver's seat and from an empty cigarette package found in the cafe were identified as those of Navarro.

1. Navarro assigns as error the admission in evidence of the various items taken from the automobile, arguing that these are the product of a warrantless, unlawful search in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. After a voir dire the judge ruled that the initial entry into the car, which led to the discovery of the handgun and the examination of the envelope of Connecticut and New Jersey licenses, was not a search; and that the seizure of the car and the subsequent search of it were grounded on probable cause and were valid. Later in the trial, testimony by one witness seemed to contradict some of the testimony given at the voir dire, and the judge permitted a second voir dire to inquire into the discrepancies. The judge accepted the testimony by the police at the second voir dire, stating that it reinforced his findings and conclusions based on the first voir dire.

The evidence offered at the two voir dires amply supports the findings of the judge and his ruling that the contents of the automobile were admissible, although we reach that result by reasoning different from his.

A distinction is made in several Federal cases (the issue appears not to have arisen yet in a case in the Supreme Judicial Court) between an examination of a vehicle for the purpose of identifying it, and a search of the vehicle for its contents. See, e.g., *Cotton* v. *United States,* 371 F. 2d 385, 393 (9th Cir. 1967), *United States* v. *Powers,* 439 F. 2d 373, 375 (4th Cir. 1971), cert. den. 402 U. S. 1011 (1971). See also *United States* v. *Dadurian,* 450

F. 2d 22, 24-25, and n. 2 (1st Cir. 1971). Numerous Federal cases have held that examination of motor vehicles for the purpose of identifying them may be conducted within certain limits by police officers having legitimate grounds for doing so, not amounting to probable cause, without violating Fourth Amendment rights. See, in addition to the three cases last cited, *United States* v. *Self,* 410 F. 2d 984, 986 (10th Cir. 1969); *United States* v. *Polk,* 433 F. 2d 644, 646-648 (5th Cir. 1970); *United States* v. *Brown,* 470 F. 2d 1120, 1122-1123 (9th Cir. 1972); *United States* v. *Squires,* 456 F. 2d 967, 969-970 (2d Cir. 1972); and *United States* v. *Ware,* 457 F. 2d 828, 829 (7th Cir. 1972), cert. den. 409 U. S. 888 (1972). See also *Simpson* v. *United States,* 346 F. 2d 291, 296-297 (10th Cir. 1965, dissenting opinion of Pickett, J.). Some of those cases have been decided on the theory that an examination of a mark like the vehicle identification number, although necessitating an opening of the door, is not a search at all. (See, e.g., the *Cotton* case and the dissent in the *Simpson* case.) Others hold that such an entry is a search, but one justified (because of the limited intrusion and the quasi-public nature of the mark of identification) by a "legitimate reason" amounting to something less than probable cause. *United States* v. *Powers, supra.*

Although Fourth Amendment requirements have been held to apply to automobile searches (*Preston* v. *United States,* 376 U. S. 364 [1964], *Coolidge* v. *New Hampshire,* 403 U. S. 443 [1971]), the United States Supreme Court has long distinguished between searches of automobiles and searches of buildings. *Carroll* v. *United States,* 267 U. S. 132, 147 (1925). *Cooper* v. *California,* 386 U. S. 58, 59 (1967). " [F]or the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." *Chambers* v. *Maroney,* 399 U. S. 42, 52 (1970). The distinction is grounded on the mobility of automobiles, which results in their frequent use as instruments of crime, and a lesser expectation of

privacy, which results from their being out on public
ways, open in large measure to visual inspection by the
public at large, and subject under many conditions to
minor but valid police intrusions in the administration of
the motor vehicle laws. *Cady* v. *Dombrowski*, 413 U. S.
433, 440-442 (1973).

The latter factor — expectation of privacy — applies
with varying force to different parts of an automobile.
"Thus, warrantless searches of the trunk, the glove
compartment, the console or similar areas have been
approved only within strict limitations, such as a require-
ment of probable cause [1] to search the car, *Chambers*
v. *Maroney*, 399 U. S. 42 (1970), or a search incident to a
lawful arrest, *Preston* v. *United States*, 376 U. S. 364
(1964), or a showing the car itself was contraband,
*Cooper* v. *California*, 386 U. S. 58 (1967)." *United
States* v. *Powers*, 439 F. 2d 373, 375 (4th Cir. 1971).

"Inspection of a car's identification number differs
from a search of a vehicle and seizure of its contents in
one important aspect. The occupants of the car cannot
harbor an expectation of privacy concerning the identifi-
cation of the vehicle. The State requires manufacturers
to identify vehicles by affixing identification numbers
which are also recorded in registries where the police and
any interested person may inspect them. Since identifi-
cation numbers are, at the least, quasi-public informa-
tion, a search of that part of the car displaying the
number is but a minimal invasion of a person's privacy.
A police officer, therefore, should be freer to inspect the

---

[1] And in addition, as *Chambers* v. *Maroney* and *Coolidge* v. *New
Hampshire*, both *supra*, appear to have decided, something constitu-
ting "exigent circumstances" justifying dispensing with the procedures
for issuance of a warrant. Whether the requirement of "exigent
circumstances" has application to a vehicle out on a public way is
subject to some doubt. See *Commonwealth* v. *Haefeli*, 361 Mass.
271, 280-281 (1972). Such cases may be distinguished from *Coolidge*
v. *New Hampshire, supra,* and *United States* v. *Squires*, 456 F. 2d
967 (2d Cir. 1972), in each of which the automobile was parked in a
private driveway.

numbers without a warrant than he is to search a car for purely private property." *United States* v. *Powers, supra,* at 375.[2]

The principle is equally applicable to the case before us. The object of the entry into the vehicle was not to search the vehicle for its contents. Rather, it was to find out where the vehicle was from, and to determine if it was the vehicle which was the subject of the second radio bulletin. There could scarcely be a more appropriate case for a finding of a legitimate reason for identifying a motor vehicle. The police had apprehended the codefendant Tosi by footprints in the snow leading directly from the scene of the crime to a place where Tosi had no right or good reason to be. Yet he did not have in his possession, nor was there any indication that he had discarded along the way, tools which might have enabled him to force open the outer door of the safe. These facts obviously suggested the existence of an accomplice. The proprietor of the motel where Tosi had stayed indicated that he had in fact arrived with another man. A vehicle — presumably belonging to or at least in the possession of the other man — was described by make, year, color and the fact that it was very dirty. Lacking a registration number, the description could fit more than one car. Thus, when the police officer came upon the vehicle in question, he could not be sure whether it was the vehicle the police were seeking. By radio transmission he had been told that the latter vehicle was "from the Boston area." Had a driver been in the car, he could have been asked to produce his license and registration. Because the car was parked, with no driver in sight, the police officer must choose either to stake out the car, which might have been that of a General Electric worker from the Pittsfield area, abandoning further search for a

---

[2] The *Powers* case has been commented on with apparent approval in the First Circuit. See *United States* v. *Dadurian,* 450 F. 2d 22, 25, and n. 2 (1st Cir. 1971).

vehicle from the Boston area, or to attempt to identify the origin of the car from markings.[3] The officer testified that he hoped to be able to make an identification from decals or stickers. In fact, he discovered the gun when leaning across the front seat to examine the back of the inspection sticker, which was glued to the lower right corner of the front windshield in accordance with State law, and which would be expected to identify the issuing inspection station on the reverse side, not visible from the exterior of the car.

We see no essential difference between the opening of an unlocked vehicle in order to identify it through the vehicle identification number on the doorpost and the opening of an unlocked vehicle in order to identify its general place of origin through the inspection station named on the rear of the inspection sticker. The degree of intrusion is minimal in either case. So long as the inspection is justified, and is not a pretext for an exploratory search, it is well within the concept of reasonableness which defines the essential boundary within which the government is confined by the Fourth Amendment. See *Commonwealth* v. *Haefeli*, 361 Mass. 271, 280 (1972).

In the view we take of this case, we do not find it necessary to inquire whether the officer's viewing of the blank Connecticut driver's license on the front seat, when coupled with the fact that the vehicle matched four elements of the broadcast description, and the fact of its proximity to the scene of the crime, constituted probable cause justifying a search of the vehicle. Police examination of identifying plates or stickers required by law to be carried on motor vehicles need not be justified by probable cause. *United States* v. *Powers*, 439 F. 2d 373, 376 (4th Cir. 1971). Rather, the test of the validity of such minimal intrusions is set forth in *Terry* v. *Ohio*, 392 U. S. 1, 21-22 (1968): "[W]ould the facts available to

---

[3] There was testimony to the effect that the present vehicle identification computer system had not yet come into operation.

the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" We hold that that standard was met in the case before us. See *Commonwealth* v. *Matthews,* 355 Mass. 378, 380-381 (1969).

The seizures and searches that followed were clearly justified on familiar principles. The discovery of the loaded handgun in plain view on the front seat followed a lawful entry for the limited purpose of identification, and it, together with facts previously known to the police, constituted probable cause justifying a search of the vehicle. *Commonwealth* v. *Wilson,* 360 Mass. 557, 560 (1971). *Commonwealth* v. *Ross,* 361 Mass. 665, 681-682 (1972). *Commonwealth* v. *Ventola,* 1 Mass. App. Ct. 459, 464 (1973). The likelihood that there was an accomplice in the area capable of moving the vehicle constituted an "exigent circumstance" justifying proceeding without a search warrant. "*Carroll* [v. *United States,* 267 U. S. 132 (1925)] . . . holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers* v. *Maroney,* 399 U. S. 42, 51 (1970). See also *Commonwealth* v. *Avery,* 365 Mass. 59, 64-65 (1974). Since the police were empowered to make an immediate search of the car, they were empowered alternatively to seize the car and make the search at the station house. *Chambers* v. *Maroney, supra,* at 51-52.

The judge was correct in denying the motion to suppress the contents of the vehicle.

2. The judge admitted in evidence two items of clothing: a pair of gloves, said to be soft and pliable, found sixty-five feet or so from the cafe along the path of footprints which led to the codefendant Tosi, and Tosi's trousers showing dust like that found in the cafe in front of the safe. The defendant Navarro took exceptions to

their admission in evidence. Those items of evidence were clearly linked to Tosi and to the cafe break. *Commonwealth* v. *Lewis*, 346 Mass. 373, 382 (1963). Navarro was sufficiently linked to the break through his fingerprint on the cigarette carton found in the cafe and through the evidence tending to show that Tosi had arrived by automobile at the motel the previous evening in the company of Navarro. We are of the opinion that there was no error in admitting the evidence generally.

3. The judge acted properly, within his sound discretion, in refusing to declare a mistrial when it appeared that there was a violation of his order for the sequestration of witnesses. *Holder* v. *United States*, 150 U. S. 91, 92 (1893). *Commonwealth* v. *Crowley*, 168 Mass. 121, 128 (1897). Wigmore on Evidence (3d ed.) § 1842. The grant or revocation of an order of sequestration, like other orders relating to the course of the trial, is discretionary with the trial judge. *Commonwealth* v. *Parry*, 1 Mass. App. Ct. 730, 736 (1974), and cases cited. The judge said that he felt that the violation was "not malevolent"; but even in a case where a violation of a sequestration order is wilful a trial judge might for good reason prefer to invoke contempt proceedings rather than declare a mistrial. *Holder* v. *United States, supra.* Ann. 14 A. L. R. 3d 16, 107-111.

4. There was a sufficient basis for the judge's finding that Officer Mason was qualified to testify as an expert in fingerprint work. "Such infirmities as were shown in the knowledge and skill of the witness did not put his testimony out of the case, although it might have affected its weight." *Commonwealth* v. *Shea*, 356 Mass. 358, 361 (1969). The judge allowed defense counsel ample scope in cross-examining the witness, and acted within his discretion in excluding the question, "Is there a possibility you made a mistake here?"

5. There was no error in denying Navarro's motion for a directed verdict. The evidence that Tosi was traveling with another person, that he had arrived in the

area in a vehicle registered to Navarro's brother and containing Navarro's own driver's license and, that Navarro's fingerprint was found on a cigarette package in the cafe, was sufficient basis for submitting to the jury the question whether Navarro participated in the break. That evidence justified the inference that Navarro was in the Pittsfield area, and was using the car; and these inferences warranted the jury in concluding that Navarro was in possession of the burglar's tools and the firearm ammunition, and had been unlawfully carrying the firearm under his control in the car. *Commonwealth* v. *Fancy*, 349 Mass. 196, 204 (1965).

6. The day after concurrent prison sentences were imposed on the four indictments, the judge recalled the defendant, and, in the absence of defense counsel (the basis of the sole objection argued), vacated the sentence of two and one half to three years for unlawful possession of firearm ammunition and instead imposed a sentence of $100. See *District Attorney for the No. Dist.* v. *Superior Court*, 342 Mass. 119, 126-128 (1961); G. L. c. 278, § 29C. We are of the opinion that the defendant should have had an opportunity to have defense counsel present. See *Townsend* v. *Burke*, 334 U. S. 736, 738-741 (1948), and *Mempa* v. *Rhay*, 389 U. S. 128, 133-137 (1967). For this reason the sentence on indictment No. 11288 must be vacated, and the defendant must be sentenced again on the verdict.

7. We have considered each of the other assignments of error and find no merit in them. They do not warrant discussion.

The sentence on indictment No. 11288 is vacated, and the defendant is to be resentenced on that indictment. The judgments on indictments No. 11283, 11286 and 11287 are affirmed.

*So ordered.*