**Thelma J. DAVIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21354.**

United States Court of Appeals Ninth Circuit.

Aug. 17, 1967.

knowingly concealed and facilitated the transportation and concealment of a quantity of heroin, knowing the drug had been imported and brought into the United States contrary to law. Each defendant was sentenced to a five-year term of confinement. Davis challenges her conviction, invoking the appellate jurisdiction conferred upon us by 28 U.S.C. § 1291.[1]

Davis and Stroops were observed to cross the United States-Mexico boundary by automobile at the San Luis, Arizona, port of entry. Their vehicle stopped there briefly but was not detained. Customs Agent Martin was instructed by his supervisor, one Holleron, to keep the car under surveillance. Pursuant to that instruction, Martin followed the vehicle until it stopped at the agricultural inspection station near Winterhaven, California, some 32 miles from the border. At that time Martin directed Davis and Stroops to alight from the vehicle, and a search was conducted by Agent Holleron. Although the search disclosed no narcotic, a loaded pistol was discovered in Davis' purse, and she was placed under arrest for carrying a concealed weapon. She was then taken in a sheriff's vehicle to the sheriff's Winterhaven substation. During the trip she rode between two officers in the front seat of the vehicle. The contraband which led to the prosecution was found under a "cool cushion" on the front seat of the sheriff's vehicle on the following day.

Three alleged grounds for reversal were here presented in the opening brief.[2] After oral argument and upon further examination of the record, we

J. Perry Langford, Langford, Langford & Land, San Diego, Cal., for appellant, Davis.

Edwin L. Miller, U. S. Atty., Phillip Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and HAUK, District Judge.

ELY, Circuit Judge:

In a trial to a jury in the District Court, Thelma J. Davis and Joseph Wayne Stroops were found to have violated 21 U.S.C. § 174 in that they had

---

1. Although Stroops filed a Notice of Appeal, his appeal was not pursued.

2. It was argued that the search conducted at the agricultural inspection station was illegal for lack of probable cause and that the heroin recovered from the sheriff's car, since it constituted one of the "fruits" of that illegal search, should not have been admitted into evidence. The District Court upheld the legality of the search upon the rationale that it was a border search, not required to be sup-

ported by probable cause. Rivas v. United States, 368 F.2d 703 (9th Cir. 1966), cert. denied, 386 U.S. 945, 17 L.Ed.2d 875, 87 S.Ct. 980 (1967). Davis urges that, since the search was conducted 32 miles beyond the point at which she and Stroops entered the country, and because there had been a three- or four-minute break in the continuity of surveillance, the search cannot be properly classified as a border search.

The second contention rests upon the premise that Davis' alleged conduct was

requested additional briefing concerning the sufficiency of the evidence that appellant had possessed the contraband discovered in the sheriff's car.[3] The jury was instructed that it might infer Davis' knowledge of the drug's illegal importation, an essential element of the offense charged, from the fact, if true, that she had possessed the drug in the United States.

The circumstances surrounding the recovery of the heroin are found in the testimony of Sergeant Russell, a member of the Imperial County Sheriff's Department, who transported appellant from the agricultural inspection station to the Winterhaven substation in his official vehicle. Russell had examined his car at about 5 p. m. on January 28, 1966, the day on which appellant and Stroops were arrested. "I more or less go over the vehicle, looking to see if there's been any weapons left or anything in the vehicle * * *." He did not at that time, however, look under the "cool cushion" on the driver's seat, where a matchbox containing the contraband was eventually discovered. Russell transported no one in the automobile between 5 p. m. and 8:30 or 9 p. m., when Davis entered the car. Four people then occupied the vehicle. Russell drove, Davis sat in the middle of the front seat, and a temporary matron, one Chandler, sat on the right. Holleron sat in the rear seat. Reaching the substation, all four occupants left the car. When Sergeant Russell returned to the car, which had been left unlocked for 30-40 minutes, he saw nothing unusual on the front seat or elsewhere in the vehicle. Later that evening, Russell and three other officers drove in his car to a coffee shop. The car was left unattended and unlocked for approximately 20 minutes while the officers were in the shop. Russell testified that he did not, on leaving the car to enter the coffee shop, see the matchbox. Russell left the car at the Winterhaven substation that evening and saw no matchbox when he removed himself from the car at that time. While the front doors of the vehicle were locked during the night, the rear doors were not, and they could be opened from the outside. Although the front and rear compartments of his car are separated by a metal screen, Russell admitted that the matchbox could have been folded and dropped through an opening at the top of that screen. Russell returned to the car on the morning of January 29th and did not see the matchbox at that time. He did, however, notice that his flashlight, which he kept at approximately the same location where the matchbox was later found, was in place. The car was left, unlocked with the engine running, for three or four minutes that morning while Russell was inside the Winterhaven post office. When he returned to the vehicle, he observed that the "cool cushion", not unusually, was out of its proper position. On moving it to the proper place, Russell uncovered and saw the matchbox.

Sergeant Russell was unable to testify with certainty that the matchbox was not in his vehicle prior to the time

proscribed by 26 U.S.C. § 4724, as well as by 21 U.S.C. § 174. She argues that the discretion vested in the United States Attorney to proceed under either of those statutes enabled him, in effect, to impose a penalty for her pleading not guilty by seeking an indictment under 21 U.S.C. § 174 rather than for violation of the more lenient taxing statute. This, she says, is an unconstitutional delegation of legislative and judicial power which deprives her of due process of law.

The third point in the opening brief is that Davis' right to be represented by counsel, guaranteed by the sixth amendment, was infringed because she and Stroops were represented by the same trial attorney, that their interests were conflicting, and that she was never advised of the existence of the conflict or of her right to be represented by independent counsel.

We do not reach the foregoing contentions.

3. Although this point was not emphasized in Davis' opening brief, her trial counsel had unsuccessfully raised the issue in the District Court by objection to the admission of the heroin as evidence and by motion for acquittal at the close of the evidence.

**224**

he transported appellant. He related at least four occasions, subsequent to appellant's sole opportunity to have deposited the contraband, upon which observation of the vehicle revealed nothing unusual about the nature of its contents. If the evidence was insufficient to establish that Davis possessed the contraband, it was error to permit the jury to rest an inference upon the fact of possession. Possession was sought to be proved by circumstantial evidence. "While circumstantial evidence may support a conviction, it must be adequately sufficient to enable a reasonable determination that it excludes every hypothesis except that of guilt." Whaley v. United States, 362 F.2d 938, 939 (9th Cir. 1966). Here, it was not that sufficient.[4] There was ample opportunity for someone other than Davis to have placed the matchbox in the sheriff's car. Reasonably excluding the hypothesis of guilt is the fact that the matchbox was not discovered until many hours after Davis had left the car and after, in the interim, the vehicle had repeatedly been left unlocked and unattended. After the transportation of Davis, the officer made several careful observations of his vehicle. The matchbox was not seen, although the "cool cushion" was similarly pushed out of place on each occasion when the officer left the car and replaced by him when he reentered. It was not until after the third occasion when the car had been left unguarded and wholly unlocked that, upon the replacing of the cushion, the matchbox was seen upon the seat. Previously, according to the officer's precise testimony, there had been nothing "in the vehicle * * * that should not have been there."

■ On the crucial issue of possession of the drug, it is apparent that the Government's case was carefully and fully developed. Upon remand, the indictment will be dismissed.

Reversed.

4. Cf. Orozco-Vasquez v. United States, 344 F.2d 827 (9th Cir. 1965); Delgado v. United States, 327 F.2d 641 (9th Cir. 1964); Doherty v. United States, 318 F. 2d 719 (9th Cir. 1963); Arellanes v. United States, 302 F.2d 603 (9th Cir. 1962), cert. denied, 371 U.S. 930, 9 L. Ed.2d 238, 83 S.Ct. 294 (1962).