97 N.J. Super. 565 (1967)
235 A.2d 680
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RONALD GAUDIOSI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1967.
Decided November 16, 1967.
*567 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Joel Sondak, Assistant Prosecutor, argued the cause for appellant (Mr. Brendan T. Byrne, Prosecutor, Essex County, attorney).
Mr. Peter S. Valentine argued the cause for respondent (Messrs. Lordi, Lordi & Bianchi, attorneys).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Upon leave granted, the State appeals from an order granting defendant's motion to suppress evidence *568 (lottery slips) found when defendant's person was searched without a warrant.
The arrest and the search incidental thereto were made by Lieutenant Dougherty and Investigator Roberts of the prosecutor's office in the public hallway of 291 Morris Avenue, Newark, shortly after 3 P.M. on December 3, 1965.
The only testimony heard and considered by the court before granting the motion was that of Dougherty and Roberts. Defendant offered no evidence. Instead, over the State's objection to the "bifurcation" of the motion to suppress, the court permitted defendant to move for a ruling in his favor after the State's witnesses had testified and to reserve the right to present evidence if the motion was denied.
The procedure adopted by the court was improper. It is not authorized by R.R. 3:2A-6, the rule governing motions to suppress evidence allegedly seized as the result of an unlawful search. The rule, which applies whether the search is with or without a warrant, provides in pertinent part that:
"A brief stating the facts and the arguments in support of the motion shall be submitted with the notice of motion. If material facts are disputed, testimony thereon shall be taken in open court. * * * The motion shall be determined before trial."
The taking of testimony on the motion is not a trial in the conventional sense so as to authorize interlocutory motions for dismissal or judgment. The rule contemplates that the motion to suppress be heard and decided by the court on the basis of everything each side has to offer, including testimony if material facts are disputed. This means not only the testimony for the State but also such evidence as defendant may wish to offer.
The procedure adopted by the trial court makes it impossible for us to finally resolve the motion to suppress even though we have concluded, for the reasons hereinafter set forth, that on the present record the motion should not have been granted. We are compelled to remand the matter to the trial court to enable defendant to offer evidence as to *569 such of the material facts as he may dispute. The trial court will then make new findings of fact and concluisons of law on the basis of all the evidence before it.
The present record reveals the following:
291 Morris Avenue and 292 Morris Avenue are multiple-family houses on opposite sides of the street adjacent to 14th Avenue. Roberts had conducted a surveillance of the area for two days following receipt of a "tip" that an apartment in 292 was being used as a lottery drop. The surveillance confirmed the accuracy of the "tip." It disclosed among other things, the presence in the immediate area of a known "lottery controller," a "lookout" at the corner who on occasion was handed a quantity of slips and papers, and a steady traffic into 292 between 2 P.M. and 4 P.M. of a number of men and women who left the building within but a few minutes after entering. To a lesser degree there was similar traffic into 291, with some of the suspected runners leaving 291 to enter 292 and others entering 291 after leaving 292. Dougherty had secreted himself on the upper floors of 292 and had determined that the visitors were entering the apartment on the first floor. A similar determination was not made with respect to the apartment, if any, being used in 291.
Search warrants were then obtained authorizing, inter alia, a search of the first-floor apartment in 292 Morris Avenue and persons found therein and the "lookout." Shortly before 3 P.M. on December 3, 1965 Dougherty and Roberts arrived in the area as part of a group of seven officers armed with the search warrants. Dougherty, Roberts and another officer, Wilson, went into the hallway of 291; the others, joined shortly by Wilson, went into 292.
The public hallway of 291 Morris Avenue extends in a straight line from the front door to the rear door of the building. Dougherty and Roberts, who were wearing rough working clothes, had stationed themselves at the front door looking out onto Morris Avenue. They saw defendant walking up 14th Avenue toward Morris. From his previous surveillances Roberts recognized defendant as one who on those *570 occasions had entered the rear door of the hallway of 291 and had then proceeded through the front door and across the street into 292 Morris Avenue. Roberts so informed Dougherty. The officers moved to the rear of the hallway, near the back door. Defendant then walked in through the rear door, took several steps into the hallway and when he saw the two men, turned and started to run out, at the same time throwing or dropping a pad or slips of paper to the floor. The officers ran forward; Dougherty seized defendant; Roberts picked up the slips. The slips were lottery slips. Defendant was arrested; search of his person revealed additional lottery slips.
The trial judge's conclusion that there was no probable cause for the arrest and search was based on his findings that Dougherty's "purpose" in going into the hallway of 291 was to seize and search any person who came into the hallway who
"* * * was pointed out by Detective Roberts as having been seen by Detective Roberts in his previous surveillance of both 291 and 292 Morris Avenue; that is, anyone who was seen by Detective Roberts to have been acting in a manner that indicated to Detective Roberts that he was involved in lottery operations.
With this intention, I also find from Lieutenant Dougherty's testimony, that when this defendant entered the back hall, Lieutenant Dougherty moved to seize him and was then about to search him.
I find, further, confronted with this situation, the defendant threw something and that something turned out to be a pad with lottery figures on it.
I find as a fact that the throwing of this lottery pad resulted from the motion of Lieutenant Dougherty to apprehend and search the defendant."
We find no support in the record for the court's finding as to what motivated defendant in dropping the lottery slips  defendant did not testify  nor for the court's suggestion that Dougherty's movement indicated he was about to "apprehend and search the defendant." Moreover, whatever defendant's motivation, the fact that he did drop the slips is not to be disregarded in evaluating the circumstances to determine whether probable cause existed.
*571 Further, Dougherty's "purpose" in stationing himself in the hallway of 291 is not material to the issue presented, this altogether apart from the fact that the evidence does not support the court's finding as to his "purpose." The controlling factor is not what the police intended when they entered the hallway of 291. Whether it is whether under all the circumstances as they actually developed, on the background of the information which the police already had, the officers had reasonable cause to believe that defendant was committing a crime, that he was engaged in lottery operations. On the record here, it is clear that they did. Cf. State v. Contursi, 44 N.J. 422, 428-433 (1965).
Dougherty and Roberts are experienced law enforcement officers. From what they had learned from the surveillances made following the anonymous "tip" it is evident that they had reasonable cause to believe that substantial lottery operations were taking place in the area of 292 and 291 Morris Avenue. In that setting defendant's conduct, his entry through the rear door of 291 in accordance with the pattern of his travels on the days of the surveillances, followed by his dropping the pad or slips and his attempted flight furnished more than sufficient basis for the officers' belief of defendant's guilt. State v. Contursi, supra; State v. Davis, 50 N.J. 16, 23 (1967).
We need not resolve whether defendant's arrest took place before or after the dropped slips were examined and found to be lottery slips. In either circumstance, on the present record, there was reasonable cause to arrest and search.
In view of the necessity of a remand we note that we disagree with the State's contention that defendant has the burden of persuasion on the motion. In a situation where the challenged search was made under the authority of a search warrant, the warrant is presumed valid and the burden of establishing its invalidity rests upon defendant. State v. Mark, 46 N.J. 262, 273 (1966). But where, as here, the search was without a warrant and the legality of the search depends upon the existence of probable cause or alternatively *572 the defendant's voluntary consent to the search, the burden of proof is on the State. State v. Contursi, 44 N.J. 422, 425 (1965); State v. Scrotsky, 39 N.J. 410, 414 (1963); State v. King, 44 N.J. 346, 352 (1965).
The order suppressing evidence is reversed and defendant's motion to suppress remanded for further hearing consistent with this opinion. We do not retain jurisdiction.