COMMONWEALTH *vs.* RICHARD ANTOBENEDETTO.

Middlesex.    January 8, 1974. — July 25, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Search and seizure. *Practice, Criminal,* Suppression of evidence, New trial. *Evidence,* Presumptions and burden of proof. *Narcotic Drugs. Radio Message.*

Stopping an automobile on a highway and searching it by police without a warrant are constitutionally permissible if there is probable cause therefor. [53]

In order for a police radio bulletin to constitute probable cause for police to stop an automobile on a highway and search it without a warrant, there must be probable cause for the issuance of the bulletin itself. [53-56]

At the hearing of a motion by the defendant in a criminal case to suppress articles found in an automobile when it was stopped on a highway and searched by police officers acting without a warrant on information contained in a police radio bulletin which they had received, the burden was on the Commonwealth to prove facts showing probable cause for the issuance of the bulletin itself, and in the absence of such proof an exception by the defendant to denial of the motion must be sustained; the usual rule, that a defendant seeking in a criminal case to suppress evidence as illegally obtained has the burden of proving the illegality was not applicable in the circumstances. [53-58] TAURO, C.J., joined by BRAUCHER, J., dissenting.

Where a defendant charged with illegal possession of narcotic drugs failed at his trial without jury to raise the issue of scienter as a necessary element of the crime, he was not entitled as of right to raise such issue on a motion for a new trial [58-59]; HENNESSEY, J. joined by KAPLAN, J., dissenting in the circumstances, being of opinion that judgments of not guilty should be entered for want of proof of scienter [72-73].

TWO COMPLAINTS received and sworn to in the First District Court of Southern Middlesex on June 9, 1971.

On appeals to the Superior Court, a motion to suppress evidence was heard by *Connolly, J.,* and the cases were heard by *Ponte, J.*

*John A. Robertson* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   Two criminal complaints were issued against the defendant charging him with unlawful possession of narcotic drugs. G. L. c. 94, § 205, repealed by St. 1971, c. 1071, § 2. The case was tried without jury in the Superior Court, and on April 20, 1972, the defendant was found guilty. The case is before us on the defendant's exceptions to the denial of motions to suppress evidence and for a new trial.

The evidence presented at trial and at the hearing on the motion to suppress may be summarized as follows. On the afternoon of June 9, 1971, the defendant was driving on Concord Street in Framingham in a red Plymouth automobile which he had borrowed from an acquaintance earlier in the day. Seated beside the defendant in the front seat was a friend, Stephen Gwinn. Also on Concord Street at this time was an unmarked police car manned by Lt. Robert M. Keefe and Sgt. Thomas Cobb of the Framingham police department. These officers had received a radio communication from police headquarters informing them that two young men had attempted to pass a bad check at the Framingham Trust Company and that they were headed south on Concord Street in a red compact automobile, Massachusetts registration 227-18L. The policemen were instructed to investigate the car and its occupants. They then pulled off the road to wait. Moments later they saw the car driven by the defendant which matched the description they had received, and recognized the occupants as "known drug users and suspected bad check passers." Sgt. Cobb walked to the center of the road and shouted at the car to stop, which it did. The occupants were ordered out of the car and Lt. Keefe entered it and searched under the seat,

finding nothing. He then opened the glove compartment and discovered a small plastic container in which there was a cellophane-wrapped package which turned out to be marihuana, a foil-wrapped package which later was shown to be hashish, and a corncob pipe with foil. The defendant and Gwinn were then handcuffed and taken to the police station.

The defendant moved to suppress the evidence found in Lt. Keefe's search of the automobile, and after a hearing the motion was denied and the defendant claimed an exception. The trial judge stated that "[t]he radio message received by the police officers describing the attempted crime and the description of the car the men alleged to have committed the crime were riding in, together with the recognition by the officers of the occupants as bad check passers — afforded the officers probable cause to stop the car and arrest the occupants. These are circumstances justifying the arrest and also furnishing probable cause for the search."

The constitutional law respecting searches of automobiles under the Fourth Amendment to the United States Constitution is a topic which has received extended attention both in this court and in the Supreme Court of the United States. Chiefly because of the inherent mobility of automobiles these searches have been deemed in certain circumstances to constitute an exception to the necessity of a search warrant. This idea was first articulated in *Carroll* v. *United States,* 267 U. S. 132 (1925), in which the Supreme Court held that a warrantless search of an automobile stopped on the highway was reasonable if probable cause existed to support the search. The rule has been restated many times. See, e.g., *Chambers* v. *Maroney,* 399 U. S. 42 (1970); *Coolidge* v. *New Hampshire,* 403 U. S. 443, 458-460 (1971); *Cady* v. *Dombrowski,* 413 U. S. 433, 442 (1973); *Commonwealth* v. *Haefeli,* 361 Mass. 271 (1972). The rationale for the rule was stated in the *Chambers* case: "[T]he car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." 399 U. S. at 51.

This court has noted that with regard to many aspects of the law of automobile search "the Justices of the United States Supreme Court were in seemingly irreconcilable disarray." *Commonwealth* v. *Haefeli,* 361 Mass. 271, 278 (1972). That confusion, however, is largely centered upon the circumstances in which the risk of movement of the car is deemed sufficient to justify a warrantless search. There appears to be complete agreement that when as here an automobile is stopped on the highway by investigating officers the exigencies are such that a warrantless search may be reasonable given the existence of probable cause. "If . . . [the police officer] left the automobile while he tried to obtain a search warrant, he could not be sure that it would be there when he returned." *Id.* at 281. See the opinions in *Coolidge* v. *New Hampshire, supra,* at 460 (opinion of the court by Stewart, J., joined by Douglas, Brennan, and Marshall, JJ.); at 504 (Black, J., joined by Blackmun, J., concurring and dissenting); and at 524 (White, J., joined by Burger, C.J., concurring and dissenting). See *Cady* v. *Dombrowski,* 413 U. S. 433, 440-442 (opinion of the court); at 451 (Brennan, J., dissenting).

The parties argue extensively the question whether a lawful arrest occurred prior to the search. Limited searches incident to an arrest are another exception to the general rule that warrantless searches are unreasonable and thus unconstitutional. *Commonwealth* v. *Wilbur,* 353 Mass. 376, 379 (1967), cert. den. 390 U. S. 1010 (1968). *Chimel* v. *California,* 395 U. S. 752 (1969). Since, however, the rule discussed above concerning warrantless searches of automobiles is independent of any right to arrest, *Commonwealth* v. *Haefeli,* 361 Mass. 271, 276 (1972); *Carroll* v. *United States,* 267 U. S. 132, 158 (1925); *Chambers* v. *Maroney,* 399 U. S. 42, 49 (1970), the occurrence of such an arrest makes little difference in determining the legitimacy of the search. If probable cause existed to search the car for evidence of a crime then there is no need to justify the search by reference to a lawful arrest. If, on the other hand, the facts in this case did not provide the officers with probable cause to search then neither was there probable

cause to arrest, and the search cannot be considered incident to a lawful arrest. *Commonwealth* v. *Mitchell*, 353 Mass. 426, 428 (1967), quoting from *Beck* v. *Ohio*, 379 U. S. 89, 91 (1964). The critical issue therefore is the presence or absence of " 'reasonable or probable cause' to believe . . . [the officers would] find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Dyke* v. *Taylor Implement Mfg. Co. Inc.* 391 U. S. 216, 221 (1968).

The facts provided to the judge in the hearing on the motion to suppress did not disclose sufficient information to support a finding that probable cause existed for the search. This conclusion is compelled by the decision of the Supreme Court of the United States in *Whiteley* v. *Warden, Wyo. State Penitentiary*, 401 U. S. 560 (1971). In that case a warrantless arrest was declared unlawful as lacking probable cause. The arresting officers had relied on a police radio bulletin which gave detailed data describing the suspected perpetrators of a crime as well as the automobile in which they were thought to be driving. Two persons fitting the description driving a car which also matched the description given were arrested. The court held the arrest constitutionally defective since the radio bulletin was not itself supported by probable cause. The bulletin alone was not enough to give probable cause to the arresting officers. *Id.* at 564-569. "We do not, of course, question that the . . . police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information required to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."[1] *Id.* at 568. See *United States*

---

[1] The *Whiteley* case dealt specifically with probable cause for an arrest but the court indicated that the principles involved applied to probable cause for searches

v. *King*, 472 F. 2d 1, 7 (9th Cir. 1973); *United States* v. *Wilson*, 479 F. 2d 936 (7th Cir. 1973).

It is clear from the *Whiteley* case that to support a finding of probable cause, evidence must be adduced demonstrating that the police officer responsible for issuing the radio communication had reliable information that a crime had occurred and that the instrumentalities or evidence of that crime would be found in the vehicle described in the broadcast. The record of the evidence presented at the hearing on the motion to suppress is utterly barren of any information relative to the purported attempt to pass a bad check at the Framingham Trust Company which was the subject of the radio message. Since the reliability of that message was not established by the Commonwealth, probable cause was not shown to exist for the challenged search.[2]

We recognize that this holding may represent a departure from statements in a number of our prior cases. This court has frequently stated the general rule that on a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party. See, e.g., *Commonwealth* v. *Fancy*, 349 Mass. 196, 202-203 (1965). This rule has been applied even to cases where the moving party has shown that a search was conducted without a warrant. See *Commonwealth* v. *Roy*, 349 Mass. 224, 229 (1965); *Commonwealth* v. *LePage*, 352 Mass. 403, 411 (1967); *Commonwealth* v. *Hanger*, 357 Mass. 464, 468 (1970); *Commonwealth* v. *Andrews*, 358 Mass. 721, 722-723 (1971); *Commonwealth* v. *Colella*, 360 Mass. 144, 151

---

as well. 401 U. S. at 564. In general these standards have been regarded as identical. *Commonwealth* v. *Stevens*, 362 Mass. 24, 27 (1972), and cases cited. *Henry* v. *United States*, 361 U. S. 98, 100 (1959).

[2] The missing element of probable cause is not supplied in this case by Lt. Keefe's statement that the defendant and Gwinn were "known drug users and suspected bad check passers." The foundation of probable cause must be specific data, the reliability of which could be judged by a magistrate. Here we have "a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision. *Nathanson* v. *United States*, 290 U. S. 41, 46 (1933)." *Spinelli* v. *United States*, 393 U. S. 410, 414 (1969). Lt. Keefe provided no facts supporting his claim as to the reputations of the defendant and Gwinn. See *Commonwealth* v. *Stevens*, 362 Mass. 24, 28-29 (1972).

(1971); *Commonwealth* v. *Pignone*, 361 Mass. 566, 568-569 (1972). While the general rule cited is, we believe, a correct statement of the law and we reaffirm it, on reëxamination we believe its application to warrantless searches was misplaced. We are convinced of this view by a reading of numerous cases of the Supreme Court of the United States. These cases indicate that under the Fourth Amendment searches conducted without valid warrants are presumed in the first instance to be unreasonable. It is then up to the government to show that a particular search falls within a narrow class of permissible exceptions. The Supreme Court has said, "[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it . . . .' *United States* v. *Jeffers*, 342 U. S. 48, 51." *Chimel* v. *California*, 395 U. S. 752, 762 (1969). See *Recznik* v. *Lorain*, 393 U. S. 166 (1968); *Vale* v. *Louisiana*, 399 U. S. 30, 34 (1970).[3] It is our conclusion that where, as here, the search is without a warrant the burden of establishing its reasonableness is on the Commonwealth. In this case it was for the Commonwealth to show that probable cause existed and that the search was therefore proper under the rule of *Carroll* v. *United States*, 267 U. S. 132 (1925). To the extent that the Massachusetts cases cited above are at odds with this holding we do not follow them.

The nub of this holding does not in any sense, nor is it intended to, inhibit or cut off the prompt and effective police work evident in the apprehension of this defendant. It is designed to lead the prosecution to present at the proper time the evidence that the originator of the radio communication, on the basis of which the intercepting police acted, had reliable advice on the occurrence of a crime.

As was stated by Mr. Justice Harlan in the *Whiteley*

---

[3] This is the well established rule in the Federal courts in both warrantless searches and searches based on claimed consent. See Wright, Federal Practice & Procedure, § 675 (1969); *United States* v. *Johnson*, 425 F. 2d 630 (9th Cir. 1970), cert. dism. 404 U. S. 802.

case, 401 U. S. at 568 (1971), the police are clearly entitled to act "on the strength of the radio bulletin." This is definitely not an incident where "the constable has blundered." In fact, the reverse is true. What is lacking is the presentation at hearing by the Commonwealth of a link of evidence easy to supply if it exists. Since that link was omitted here the defendant's exception must be sustained.

We turn to the defendant's second ground of exception: that it was error for the trial judge to deny his motion for a new trial. The basis for that motion was that the Commonwealth had failed to prove the element of scienter. This court has indicated that knowledge by the defendant is not required for a conviction under the relevant statute. *Commonwealth* v. *Lee,* 331 Mass. 166 (1954). While it might be appropriate to reconsider that holding in the light of *Commonwealth* v. *Buckley,* 354 Mass. 508 (1968), in a proper case, in the instant case the defendant did not raise the issue at trial. Therefore the trial judge did not err by refusing to consider it on a motion for a new trial. It was open to the defendant to raise the legal issue of the necessary elements of the crime at trial by way of a request for rulings. *Commonwealth* v. *Albert,* 307 Mass. 239, 244 (1940). *Commonwealth* v. *Hoff,* 315 Mass. 551 (1944). *Commonwealth* v. *Goldberg,* 316 Mass. 563, 564 (1944). "[T]he defendant's resort to a motion for a new trial cannot operate to reverse or to relieve him from the position in which he had placed himself by failure to save exceptions which he could have saved at the trial." *Commonwealth* v. *Underwood,* 358 Mass. 506, 511 (1970). *Commonwealth* v. *Richardson,* 361 Mass. 661 (1972). Like the defendant in the *Underwood* case, the defendant here seeks to find a distinction from this general rule in that his new trial motion is based on alleged prejudicial constitutional error. He cites dicta in *Earl* v. *Commonwealth,* 356 Mass. 181, 184 (1969), to the effect that a trial judge has no discretion to deny such a motion. The *Underwood* case makes clear, however, that the general rule is not altered by framing the reserved question of law in constitutional terms. Furthermore, like the *Underwood* case and unlike the *Earl* case,

this was not a situation in which the defendant did not learn of facts on which the alleged error was based until after the trial. *Commonwealth* v. *Underwood, supra,* at 511-512 (1970). Here the motion was based on a purely legal contention which was available to the defendant at all times. This exception must be overruled.

*Exceptions sustained.*

TAURO, C.J. (dissenting in part, with whom Braucher, J., joins). I am constrained to dissent from so much of the majority's opinion as relates to the defendant's motion to suppress. No analysis of *Whiteley* v. *Warden, Wyo. State Penitentiary,* 401 U. S. 560 (1971), compels the conclusion reached by the majority. To the contrary, it is clearly distinguishable. The majority's unnecessary and unwarranted extension of the rule laid down in the *Whiteley* case to the facts of the instant case, in my view, contributes nothing to the development of rational rules of criminal procedure respectful of the sensitive balance to be maintained between individual rights and the legitimate expectations of a society for reasonable protection against the ravages of crime.

In the *Whiteley* case, *supra,* at 568, the United States Supreme Court stated, "We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin." By the same token, on receiving in the normal course of their duties a radio report of the commission of a felony, uttering a forged check in violation of G. L. c. 267, § 5, and also a description of the automobile involved including its color, exact registration number, and the sex and number of its occupants, Lt. Keefe and Sgt. Cobb were similarly entitled to act on the strength of that bulletin when, within a very few moments of its receipt, the vehicle so specifically described in it approached them at the location where, relying on the information contained in the bulletin, they had strategically stationed themselves to intercept it. In these circumstances it was in my opinion the right, if not the duty, of these Framingham police officers to act as they did. See *Commonwealth* v. *Brown,* 354 Mass.

337, 343 (1968). Quite consistently with the rationale of the *Whiteley* case, the officers in making their search were entitled to depend on the reliability of the radio bulletin, and the materials seized by them during that search should have been admitted in evidence where the "contrary," the unreliability of that bulletin, was not shown to be true. *Ibid.*

The language employed by the Supreme Court in the *Whiteley* case, in effect, asserts that a search of the sort here involved should be considered legal and the material seized admissible in evidence unless the unreliability of the information causing the transmission of the bulletin on which the officers acted is shown. If any logical application of the *Whiteley* case is to be made here, the burden of proving the "contrary," that is, demonstrating the unreliability of that information, must rest squarely on the defendant. On the other hand, if the Supreme Court had explicitly stated that this sort of search were to be considered legal and the material seized admissible only if the reliability of that information were shown then, of course, I would be compelled to reach the conclusion which the majority have reached in the present case. The fact is, however, that the Supreme Court did not use any language which compels the majority's conclusion. See Am. Law Inst., Model Code of Evidence, Rule 11 (1942), with respect to the admissibility of relevant evidence subject to a condition.

In the instant case, the "contrary" was not shown to be true. The defendant never attempted to raise any factual question regarding the reliability of the radio bulletin transmitted by the police dispatcher to Lt. Keefe and Sgt. Cobb. There is no indication that the police dispatcher was not available as a witness who could have been summonsed by the defendant to testify at the hearing on the motion to suppress with respect to the events causing him to transmit the radio bulletin to Lt. Keefe and Sgt. Cobb. Nor is there any record that the defendant ever sought to elicit any testimony on this subject which would have raised at that hearing the issue now advanced here for the first time on appeal. An earlier raising of the issue would have put the

prosecution on notice as to the nature of the defendant's claim.

In the *Whiteley* case, on the other hand, "at every stage in the proceedings below [the] petitioner argued the insufficiency of the warrant as well as the lack of probable cause at the time of arrest." *Id.* at 569. Furthermore, again in the *Whiteley* case, the prosecution "[k]nowing the basis for [the] petitioner's constitutional claim . . . [deliberately] chose to try . . . [the case] on the record it had developed" out of an erroneous conviction that the petitioner's argument could not prevail on appeal. *Ibid.*

The instant case reaches us in a totally different posture, one, as the majority note, "utterly barren of any information relative to the purported attempt to pass a bad check at the Framingham Trust Company." Unlike the apparently more assiduous Whiteley, the defendant here never argued the unreliability of the information causing the dispatcher to transmit the radio bulletin. Nor, never having been confronted with such an argument, did the prosecution ever deliberately choose to ignore any constitutional claim based on it. Therefore, absent any such challenge by the defendant to the reliability of the radio bulletin at the hearing on his motion to suppress, it most certainly is not clear from the *Whiteley* case that, as matter of law compelled by a controlling Federal decision, the burden of establishing the reliability of the information causing the transmission of the radio bulletin rests on the Commonwealth.

It has long been the majority rule, here and elsewhere, that "[o]n a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party." *Commonwealth* v. *Fancy,* 349 Mass. 196, 202 (1965). *Commonwealth* v. *Roy,* 349 Mass. 224, 229 (1965). *Commonwealth* v. *Mitchell,* 350 Mass. 459, 464 (1966). *Commonwealth* v. *Owens,* 350 Mass. 633, 636 (1966). *Commonwealth* v. *Stirling,* 351 Mass. 68, 74 (1966). *Commonwealth* v. *Nunes,* 351 Mass. 401, 404-405 (1966). *Commonwealth* v. *LePage,* 352 Mass. 403, 411 (1967). *Commonwealth* v. *Coco,* 354 Mass. 78, 79 (1968). *Commonwealth* v. *Connolly,* 356 Mass. 617, 625 (1970), cert.

den. 400 U. S. 843 (1970). *Commonwealth* v. *Hanger,* 357 Mass. 464, 468 (1970). *Commonwealth* v. *Franklin,* 358 Mass. 416, 420 (1970). *Commonwealth* v. *Colella,* 360 Mass. 144 (1971). *Commonwealth* v. *Pignone,* 361 Mass. 566, 568-569 (1972). See *Nardone* v. *United States,* 308 U. S. 338, 341 (1939); *United States* v. *Coplon,* 185 F. 2d 629, 636 (2d Cir. 1950), cert. den. 342 U. S. 920 (1952); *Harlow* v. *United States,* 301 F. 2d 361, 373 (5th Cir. 1962), cert. den. 371 U. S. 814 (1962); *Chin Kay* v. *United States,* 311 F. 2d 317, 321 (9th Cir. 1962); *Addison* v. *United States,* 317 F. 2d 808, 812 (5th Cir. 1963), cert. den. 376 U. S. 905 (1964); *Murray* v. *United States,* 333 F. 2d 409, 411 (10th Cir. 1964), cert. den. 383 U. S. 949 (1966); *United States* v. *Morin,* 378 F. 2d 472, 475 (2d Cir. 1967); *Moore* v. *State,* 244 Ark. 1197, 1200 (1968), cert. den. 393 U. S. 1063 (1969); *State* v. *Towles,* 155 Conn. 516, 518 (1967); *Lumpkins* v. *Commonwealth,* 425 S. W. 2d 535, 536 (Ky. 1968); *People* v. *Ferguson,* 376 Mich. 90, 95-96 (1965); *State* v. *Holt,* 415 S. W. 2d 761, 764-765 (Mo. 1967); *Daniels* v. *State,* 441 P. 2d 494, 495 (Okla. Crim. App. 1967); Cook, Constitutional Rights of the Accused — Pre-trial Rights, § 71 at 432 (1972); George and Cederbaums, Criminal Procedure Sourcebook, 478-479 (1970); 22A C. J. S. Criminal Law, § 578, and § 657 (32) (a) (1961); Hughes, Evidence, § 268 at 85 (1972 Supp.).

Admittedly, the rule has developed, or more properly appears to have developed, otherwise in a number of jurisdictions, more particularly in recent years while this court, during the same period, has repeatedly reaffirmed the general rule and even purports with some departure to reaffirm it here. See *Brett* v. *United States,* 412 F. 2d 401, 405 (5th Cir. 1969); *United States* v. *Schipani,* 289 F. Supp. 43, 54 (E. D. N. Y. 1968), affd. 414 F. 2d 1262 (1969); *Ellison* v. *State,* 383 P. 2d 716, 720 (Alaska 1963); *Parrish* v. *Civil Serv. Commn. of County of Alameda,* 66 Cal. 2d 260, 268-269 (1967); *People* v. *Chacon,* 177 Colo. 368 (1972); *People* v. *Mason,* 22 Mich. App. 595, 615-616 (1970); *Butler* v. *State,* 212 So. 2d 573, 577 (Miss. 1968); *State* v. *Gaudiosi,* 97 N. J. Super. 565, 571-572 (1967); *People* v. *Baldwin,* 25

N. Y. 2d 66, 70-71 (1969); *State* v. *Elkins,* 245 Ore. 279, 292-294 (1966).

To the extent that these decisions represent a discernible trend, they also represent a convolution of the appellate process. They are based largely not on an analysis of precedents and the policies underlying them but rather on judicial speculation as to what the United States Supreme Court might decide if squarely confronted with the question who has the burden of proof on a motion to suppress for lack of probable cause. See, e.g., *State* v. *Elkins, supra,* and George and Cederbaums, Criminal Procedure Sourcebook, *supra.* Other cases sometimes cited in support of the proposition that the burden of proof rests on the prosecution in suppression hearings rely heavily on language of *Miranda* v. *Arizona,* 384 U. S. 436 (1966), which rested heavily on issues foreign to the fact situation of the instant case, namely, the inherent judicial suspicion of the voluntariness of confessions obtained during in-custody interrogations of defendants unaware of their rights to legal representation or, if aware of such rights, in the absence of counsel. See *People* v. *Baker,* 9 Ill. App. 3d 654, 659 (1973); *Gibson* v. *State,* 257 Ind. 23, 28 (1971).

In these respects, however, consider the trend in the opposite direction possibly evolving from more recent decisions of the United States Supreme Court, e.g., *Lego* v. *Twomey,* 404 U. S. 477 (1972); *United States* v. *Calandra,* 414 U. S. 338 (1974); *Michigan* v. *Tucker,* 417 U. S. 433 (1974).

In some instances, the evolution of an apparent rule imposing the burden of proof on the prosecution in hearings on motions to suppress appears to stem from an imprecise use and interchange of the words of art, "burden of proof," "burden of persuasion," and "burden of producing evidence." Compare *People* v. *Malinsky,* 15 N. Y. 2d 86, 91, n. 2 (1965), with *People* v. *Baldwin,* 25 N. Y. 2d 66 (1969), in which the burden was imposed upon the prosecution after the defendant had challenged the informer's existence and had accused the police of wiretapping. In the *Malinsky* case, the New York Court of Appeals stated: "The People,

in order to prevail, are under the necessity of going forward in the first instance with evidence to show that probable cause existed both in obtaining a search warrant and in sustaining the legality of a search made, without a warrant, as incident to an arrest." *Ibid.* Yet in the *Baldwin* case, *supra,* at 70-71, in partial quote from the foregoing footnote, the Court of Appeals stated: "While the ultimate burden of proof is on the defendant, the People must, in order to make out a prima facie case at the suppression hearing, come forward with some evidence to show probable cause." Compare also *State* v. *Gaudiosi,* 97 N. J. Super. 565 (1967), and *State* v. *Scrotsky,* 39 N. J. 410, 414 (1963), where, in applying *Mapp* v. *Ohio,* 367 U. S. 643, 655 (1961), the New Jersey Supreme Court stated: "Proof of entry by police officers into a person's home without a proper search warrant, and the taking of articles to be used in support of a criminal charge against him, without more, makes out a *prima facie* case for suppression of the seized evidence" (emphasis supplied). *State* v. *Scrotsky, supra,* at 414. However, if a warrant had been issued the burden of proof would rest on the defendant. *State* v. *Mark,* 46 N. J. 262, 273 (1966). Compare *People* v. *Ferguson,* 376 Mich. 90 (1965), with *People* v. *Mason,* 22 Mich. App. 595 (1970).

For a thorough discussion of the problems generated in some of these cases by the imprecise and inconsistent use of these terms, see McCormick, Evidence (2d ed.) §§ 336-342 (1972), and authorities cited therein, especially Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L. J. 165 (1969).

A major portion of the problem associated with the resolution of the instant case is that the "seemingly irreconcilable disarray" acknowledged in cases relating to warrantless searches of automobiles, quoting from *Commonwealth* v. *Haefeli,* 361 Mass. 271 (1972), has been united in a mixed marriage with the disarray to be found in cases relating to the burden of proof on motions to suppress. By any reasonable expectation confusion can be the only offspring of such a union.

In the midst of this confusion, the majority have found

themselves compelled by a readily and, in my opinion, a necessarily distinguishable Federal decision to make a fundamental policy change in established Massachusetts law without analyzing the basis of our prior law or the ramifications of the change in it. The characterization of this fundamental change as a "departure" from preëxisting law rather than as an outright reversal lends little to its understanding and nothing to its rationale.

If the majority, in the exercise of this court's rule making authority and its supervisory powers over the trial courts, *O'Coins, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507 (1972), had determined, as matter of policy and not of compulsion, that the proper administration of justice in this Commonwealth required a change in our pertinent evidentiary rule then they should have forthrightly reversed our earlier cases and stated the new rule without equivocation on such grounds. To have followed such a course of action would have contributed to a more incisive examination of the issues presented in the instant case and a clearer, though not necessarily different, exposition of the law. However, owing to a misplaced reliance on the *Whiteley* case, the majority have abdicated this court's responsibility for maintaining, as well as developing, the decisional law of this Commonwealth, and, to the extent that this decision might ultimately be considered by the United States Supreme Court, the law of the land.

The majority concede that "[t]his is definitely not an incident where 'the constable has blundered.' " If anything, the constables are to be commended. Rather, the majority have determined that this is an incident where the prosecution and the trial judge, relying upon a series of unequivocal opinions by this court that the burden of proof is on the defendant in motions to suppress, should now be considered to have blundered. The majority feel themselves compelled to reach this conclusion because the prosecution, never before specifically challenged by the defendant's pleadings or evidence on the point now at issue, failed to present "a link of evidence easy to supply if it exists." The majority disregard the fact that, under our criminal procedure as heretofore understood, the defend-

ant could, by a few very simple questions put to the arresting officers during the hearing on the motion to suppress, have easily raised, and perhaps resolved, this specific issue and, at that time, required the prosecution to have introduced evidence on the issue now raised here for the first time on appeal.[1] See Hughes, Evidence, § 268 at 87-89 (1972 Supp.).

It is well established that the legality of the search and admissibility of the evidence seized during it, absent the showing of any facts eroding the basis of the action of the searching officers, depend *"upon whether, at the moment the . . . [search] was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense"* (emphasis added). *Beck* v. *Ohio,* 379 U. S. 89, 91 (1964).

Certainly, Lt. Keefe and Sgt. Cobb were justified in considering the bulletin relayed to them to be "reasonably trustworthy information" which, when supported by the appearance on the scene of the automobile described in the bulletin, would authorize them to stop and search it. This much the majority concede. See *Commonwealth* v. *Barnes,* Mass. App. Ct.        ,        (1974),[a] and dissent of Presiding Justice Gillespie in *Butler* v. *State,* 212 So. 2d 573, 580-581 (Miss. 1968).

To me, it is inconsistent to concede the reasonableness of the initial search based upon the receipt of the radio bulletin by the searching officers and then to reject that

---

[1] In *Commonwealth* v. *Riggins,* post, 81 (1974), decided this day, this court upholds the admissibility of evidence which was seized by the police in circumstances whichre indistinguishable from those of the present case. In the *Riggins* case the court purports to distinguish the *Antobenedetto* case on the ground that the record in the *Riggins* case contained findings which "disclose the existence of a reliable source for the information which was broadcast over the police radio." *Id.* at 88, n. 5. Because I believe that the burden of disclosing the nonexistence of such a reliable source is properly on the defendant, where the information is conveyed to the arresting officer through routine radio channels, a burden which the present defendant has failed to carry, I can see no justification for reaching conflicting results in these two cases. The *Riggins* holding should control our decision in the present case.

[a] 312 N. E. 2d 575 (1974).

search as unreasonable in judicial proceedings in which no specific attack was made on the reliability of the message. Apparently, the majority would have it that the police officer on patrol can infer that a police dispatcher's bulletin is based on credible information received from a reliable source and not merely on the unscreened relaying of an unsubstantiated, anonymous tip, but the trial judge, acting on the same facts, without more, must come to the contrary conclusion and suppress the evidence proffered.

No question is raised as to the relevance of the materials seized and offered in evidence. The sole challenge to their admissibility was based upon the lack of probable cause existing at the time of the search.

At the hearing on the motion to suppress, the defendant brought out that the search had been conducted without a valid search warrant having been first obtained. Without more, this would have satisfied the defendant's burden of proof and established a prima facie case for suppression of the articles seized during the warrantless search of the vehicle. This I take to be the real meaning of cases such as *United States* v. *Schipani,* 289 F. Supp. 43 (E. D. N. Y. 1968); *People* v. *Chacon,* 177 Colo. 368 (1972); *State* v. *Scrotsky,* 39 N. J. 410 (1963); *State* v. *Gaudiosi,* 97 N. J. Super. 565 (1967); *People* v. *Malinsky,* 15 N. Y. 2d 86 (1965); *People* v. *Baldwin,* 25 N. Y. 2d 66 (1969); *State* v. *Elkins,* 245 Ore. 279 (1966). See *United States ex rel. Anderson* v. *Rundle,* 274 F. Supp. 364, 370 (E. D. Pa. 1967), affd. 393 F. 2d 635 (1968); *People* v. *Hurst,* 183 Cal. App. 2d 379, 384 (1960); *Traynor, Mapp* v. *Ohio* at Large in the Fifty States, 3 Duke L. J. 319, 337 (1962), cited with approval in *State* v. *Elkins, supra,* at 294.

However, when the searching officers testified that they had conducted their search on the basis of a radio bulletin received by them in the normal course of the performance of their duties, the defendant's prima facie case should then have lost its presumptive force. See Leach and Liacos, Handbook of Massachusetts Evidence, 55 (1967), and Hughes, Evidence, § 46 (1961), and cases cited therein. At this juncture, with no further inquiry into the reliability of the information presented to the police radio dispatcher,

the questions of the reasonableness of the search and the admissibility of the evidence should have been left to the judge presiding at the hearing on the motion to suppress for his decision on the basis of the evidence adduced before him.

Without any evidence to the contrary, it would not be unreasonable to permit that judge, in deciding this issue, to infer the propriety of the police action leading to the broadcast of the bulletin. Indeed, it would be reasonable to allow a presumption of regularity to arise out of the evidence presented by the prosecution if it was believed by him. Such a presumption of regularity is permitted routinely in many areas of activity. See *People* v. *Brown,* 92 Cal. App. 2d 360, 366 (1949); *People* v. *Jager,* 145 Cal. App. 2d 792, 798 (1956); *People* v. *Murphy,* 173 Cal. App. 2d 367, 376 (1959); *Bielich* v. *State,* 189 Ind. 127 (1920); *State* v. *Greul,* 59 N. J. Super. 34, 39 (1959); *State* v. *Honeycutt,* 237 N. C. 595, 598 (1953); *State* v. *Maresch,* 75 N. D. 229, 241 (1947); *Hancock* v. *State,* 156 P. 2d 155, 158 (Okla. Crim. App. 1945); *Ludwig* v. *State,* 259 P. 2d 322, 324-325 (Okla. Crim. App. 1953); *Dominguez* v. *State,* 90 Texas Crim. App. 92, 97-98 (1921). Of course, any such presumption would be rebuttable and, in fact, destroyed by the introduction of any credible evidence contrary to the presumed fact, not a heavy burden to impose upon the defendant. See Hughes, Evidence, § 44 (1961), and cases cited therein.

At the risk of having the evidence suppressed, the majority in effect place a negative burden on the prosecution of proving that evidence obtained by means of a warrantless search is free of any taint of illegality without at any time requiring the defendant even to make a specific objection to the proffered evidence. In my opinion, this is neither wise nor required.[2]

Speaking by way of dicta in the plurality opinion in *Lego* v. *Twomey,* 404 U. S. 477, 488-489 (1972), Mr. Justice

---

[2] Rule 101B of the Superior Court (1954), as amended, provides that motions to suppress evidence "shall be filed within ten days after a plea of guilty . . . but the court in its discretion may entertain such motions at any time or at the trial." The purpose of the hearing is to enable ·defendants to conduct an evidentiary

White said: "Without good cause, we are unwilling to expand currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evidence before state juries and by revising the standards applicable in collateral proceedings. Sound reason for moving further in this direction has not been offered here nor do we discern any at the present time. This is particularly true since the exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution and it is very doubtful that escalating the prosecution's burden of proof in Fourth and Fifth Amendment suppression hearings would be sufficiently productive in this respect to outweigh the public interest in placing probative evidence before juries for the purpose of arriving at truthful decisions about guilt or innocence."

Even more recently, the United States Supreme Court in *United States* v. *Calandra,* 414 U. S. 338, 347-348 (1974), stated: "The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....' "

"The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . .. Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures:

" 'The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.' *Elkins* v. *United*

---

inquiry into the legality of the police conduct. *Nelson* v. *Moore,* 470 F. 2d 1192, 1195-1196 (1st Cir. 1972). Smith, Criminal Practice & Procedure, § 528 (1970). In the *Nelson* case the court said, "An important by-product of such a procedure is that, by conducting the voir dire in the absence of the jury, possible prejudice resulting from jury knowledge of seized articles later determined to be inadmissible, is avoided."

It is clear that the Superior Court Rule 101B indicates an established practice which requires the defendant to allege and prove illegal police conduct in motions to suppress. The rule also requires that motions to suppress be supported by affidavit, which further supports the notion that the burden of proof is on the defendant.

*States,* 364 U. S. 206, 217 (1960). Accord, *Mapp* v. *Ohio,* . . . [367 U. S. 643, 656 (1961)]; *Tehan* v. *Shott,* 382 U. S. 406, 416 (1966); *Terry* v. *Ohio,* 392 U. S. 1, 29 (1968). In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."

This being so, and the constables not having blundered in this case, I cannot accept the position adopted by the majority.

"With all respect to my Brethren who agree to the judgment and opinion of the Court, I am constrained to say that I believe the decision here is a gross and wholly indefensible miscarriage of justice. For this reason it may well be classified as one of those calculated to make many good people believe our Court actually enjoys frustrating justice." Mr. Justice Black, dissenting in *Whiteley* v. *Warden, Wyo. State Penitentiary,* 401 U. S. 560, 570 (1971).

This does not mean, however, that I indorse a mechanical rule of law that would permit the police to avoid or routinely cure defects in the initial reports of criminal activity by resorting to the transmission of radio bulletins to officers on patrol who, unaware of any such defects, might then make arrests or conduct searches relying in good faith on the reliability of such bulletins. All I maintain is that, when a search of an automobile is made by police officers on patrol pursuant to the receipt in the normal exercise of their duties of a radio bulletin reporting the commission of a crime involving that automobile and a precise description of the suspects and the automobile, that search should be considered reasonable in the absence of any specific challenge to the reliability of that bulletin in a hearing on the motion to suppress. Should it become apparent, as matter of experience, that police resort to such radio bulletins as a subterfuge in order to make otherwise invalid arrests or searches then we should consider the adoption of a deterrent rule of evidence. This does not

appear to be the situation in this case and it would be, in my opinion, improper to speculate on this issue at this time.

"The States are not . . . precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." *Ker* v. *California,* 374 U. S. 23, 34 (1963).

Within the leeway allowed by the United States Supreme Court, this court should aggressively develop its own procedural and evidentiary rules on the basis of experience and a rational analysis of underlying policy considerations. It should not too quickly feel compelled to reach decisions in such cases on other grounds. Compare our experience with *Attorney Gen.* v. *A Book Named "John Cleland's Memoirs of a Woman of Pleasure,"* 349 Mass. 69 (1965), revd. 383 U. S. 413 (1966); *Attorney Gen.* v. *A Book Named "Naked Lunch,"* 351 Mass. 298 (1966); *Roth* v. *United States,* 354 U. S. 476 (1957), and *Miller* v. *California,* 413 U. S. 15 (1973). Rather, "our preference should be to work out our own destiny." *Commonwealth* v. *A Juvenile ,* 365 Mass. 421, 435.

HENNESSEY, J. (dissenting in part, with whom Kaplan, J., joins). I agree with the majority conclusions that probable cause was not shown here, and that the burden of showing probable cause rested on the Commonwealth in this case involving a warrantless search. I think it is important to emphasize that this case is unusual in that the crime reported over the police radio was not the offence on which the defendant was convicted. This has two aspects. For one thing, the majority ruling here places no substantial new burden of proof on the Commonwealth; corroboration of the radio message in most cases is easily and routinely shown by some of the same evidence which is used

to prove guilt. Secondly, since the crime which was proved here is not the one which was broadcast, it is especially important that the report should be corroborated for the reasons discussed in *Commonwealth* v. *Stevens,* 362 Mass. 24, 27-28 (1972).

Nevertheless I do not agree with the majority's decision to remand this case for a new trial. In my view it should be ordered that judgments of not guilty be entered. Therefore I respectfully dissent.

The defendant has been convicted of illegal possession of marihuana. I would hold that knowledge (or scienter) is an essential element of that crime. Further, I would hold that the evidence here does not warrant an inference of the requisite knowledge on the defendant's part.

The majority have declined to rule on this issue because the defendant's rights were not saved at this jury waived trial by appropriate requests for rulings. In most cases the administration of justice is best served by such careful adherence to rules of procedure. See *Commonwealth* v. *Underwood,* 358 Mass. 506, 511-512 (1970). In other cases justice is best served by our examining the issues despite a procedural defect. *Commonwealth* v. *Freeman,* 352 Mass. 556 (1967). This is just such a case. To decline to rule here is to emphasize form over substance. If my view of the controlling substantive law is correct, we are unnecessarily remanding the case for another trial. Further, this is not a case where the defendant is raising an appellate issue by way of afterthought. The bill of exceptions shows that defence counsel unequivocally argued, after the evidence was completed, that the government had failed to prove the essential element of knowledge. It follows that the majority's decision not to reach the issue is based on the mere failure of the attorney to reduce to writing the precise words of his argument. Nor is the evidence on that issue likely to be different, or more fully tried, at a new trial; it is *police* testimony on which the knowledge issue turns in this case.

Although we have not previously ruled on the issue, I have no doubt that we should require proof of knowledge as a requisite element of a charge of unlawful possession of drugs or narcotics. We have required proof of knowledge as

to charges of being present where such substances were kept (*Commonwealth* v. *Buckley,* 354 Mass. 508 [1968]), and we have required such proof in other similar cases. *Commonwealth* v. *Murphy,* 342 Mass. 393 (1961). *Commonwealth* v. *Clarke,* 350 Mass. 721 (1966). *Commonwealth* v. *Palladino,* 358 Mass. 28 (1970). Indeed, G. L. c. 94C, § 34, inserted by St. 1971, c. 1071, § 1, the successor statute to the now repealed statute under which the defendant was convicted, requires knowledge as an element.

Where the drugs are found on the defendant's person, knowledge may be easily inferred, at least in most cases. However, knowledge is proved in this case, if proved at all, by evidence of constructive possession. The substance was seized from the closed glove compartment of the automobile driven by the defendant. Police testimony showed that the vehicle belonged to another person, not present at the time of the arrest and search, and that the defendant had borrowed the automobile approximately one hour earlier.

In my view knowledge cannot rightly be inferred from such facts. The Commonwealth has not made out a case and I would order that judgments of not guilty be entered on the complaints. Many cases in other jurisdictions which have been concerned with constructive possession support this conclusion; in some of these cases it was held that knowledge could not be inferred from evidence substantially stronger than we have in this case. See *Davis* v. *United States,* 382 F. 2d 221 (9th Cir. 1967); *United States* v. *Holland,* 445 F. 2d 701 (D. C. Cir. 1971); *United States* v. *Bonham,* 477 F. 2d 1137 (3d Cir. 1973); *United States* v. *Davis,* 346 F. Supp. 405 (W. D. Pa. 1972); *Thompson* v. *United States,* 293 Atl. 2d 275 (D. C. C. A. 1972); *Franklin* v. *Commonwealth,* 490 S. W. 2d 148 (Ky. 1973); *Crisman* v. *Commonwealth,* 197 Va. 17 (1955). Cf. Am. Law Inst., Model Penal Code, § 2.01 (4) (Proposed Official Draft, May 4, 1962).